STATE OF CONNECTICUT *v.* TYREE D. PRESTON
(SC 17648)
(SC 17649)

Rogers, C. J., and Norcott, Katz, Palmer and Schaller, Js.

Argued October 18, 2007—officially released April 8, 2008

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, *Michael Pepper*, senior assistant state's attorney, and *Proloy K. Das*, former assistant state's attorney, for the appellant in Docket No. SC 17648, appellee in Docket No. SC 17649 (state).

*David B. Rozwaski*, special public defender, for the appellee in Docket No. SC 17648, appellant in Docket No. SC 17649 (defendant).

*Opinion*

SCHALLER, J. The defendant was charged, in three separate informations brought pursuant to General Stat-

utes § 53a-32,[1] with violating the terms of his probation by committing certain criminal offenses. After a hearing, the trial court found that the defendant had violated his probation, revoked his probation, and sentenced him to serve time in prison. The defendant appealed to the Appellate Court claiming that the trial court had: (1) improperly found that he had violated his probation; and (2) abused its discretion in revoking his probation. The Appellate Court dismissed the defendant's first claim as moot because he had pleaded guilty to the underlying offenses, thereby eliminating any live controversy about his conduct; *State* v. *Preston*, 93 Conn. App. 527, 530, 889 A.2d 845 (2006); and dismissed the second claim as moot for lack of a live controversy

---

[1] General Statutes § 53a-32 provides in relevant part: "(a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. . . . [U]pon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which such defendant is alleged to have violated the conditions of such defendant's probation or conditional discharge, shall be advised by the court that such defendant has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in such defendant's own behalf.

"(b) If such violation is established, the court may: (1) Continue the sentence of probation or conditional discharge; (2) modify or enlarge the conditions of probation or conditional discharge; (3) extend the period of probation or conditional discharge, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29; or (4) revoke the sentence of probation or conditional discharge. If such sentence is revoked, the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. Any such lesser sentence may include a term of imprisonment, all or a portion of which may be suspended entirely or after a period set by the court, followed by a period of probation with such conditions as the court may establish. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence."

based on its determination that the defendant would not suffer prejudicial collateral consequences as a result of the probation revocation. Id., 534.

The state then appealed, following our grant of certification,[2] from the judgment of the Appellate Court. In its appeal, the state claims that although the Appellate Court properly dismissed both of the defendant's claims on appeal as moot, the Appellate Court improperly concluded that the defendant's guilty plea—which rendered moot the defendant's claim that he did not violate a term of his probation—did not render moot his second claim that the trial court abused its discretion in the dispositional phase when it revoked his probation. Id., 533. The defendant also appealed from the judgment of the Appellate Court, following our grant of certification,[3] claiming that, although his appeal from the evidentiary phase of the revocation of probation hearing is moot, his appeal from the dispositional phase is not moot under the collateral consequences doctrine. We conclude that the Appellate Court properly determined that the defendant's claim with regard to the trial court's exercise of discretion to revoke his probation in the dispositional phase of the revocation of probation proceeding was not rendered moot as a result of his guilty plea. We also conclude that the Appellate Court improperly determined that the defendant's appeal was moot for lack of a live controversy. Accordingly, we reverse the judgment of the Appellate Court as to the defen-

[2] We certified the following question in the state's appeal: "Did the Appellate Court properly conclude that the defendant's appeal from the judgment revoking his probation was moot because the defendant was serving concurrent sentences for (1) the violation of probation and (2) the conviction of attempted assault in the first degree and conspiracy to commit assault in the first degree?" *State* v. *Preston*, 278 Conn. 901, 896 A.2d 106 (2006).

[3] We certified the following question in the defendant's appeal: "Did the Appellate Court properly dismiss the defendant's appeal from the judgment revoking his probation as moot?" *State* v. *Preston*, 278 Conn. 901, 896 A.2d 106 (2006).

dant's claim that the trial court abused its discretion when it revoked his probation.

The following facts and procedural history are set forth in the Appellate Court's opinion. "On September 28, 2001, the defendant was convicted of two counts of breach of the peace in the second degree in violation of General Statutes § 53a-181 and violation of probation in violation of . . . § 53a-32 and was sentenced to one year incarceration, execution suspended, for breach of the peace and one year incarceration, execution suspended, for violation of probation, followed by two and one-half years of probation. The defendant signed the notice of his conditions of probation on September 28, 2001. The terms of the defendant's probation included the condition that he not violate any criminal law." *State* v. *Preston*, supra, 93 Conn. App. 529.

"During the defendant's period of probation, he was arrested and charged with assault in the first degree in violation of General Statutes § 53a-59, unlawful discharge of a firearm in violation of General Statutes § 53-203, illegal use of a facsimile firearm in violation of General Statutes § 53-206c (c) and carrying a pistol without a permit in violation of General Statutes § 29-35 (a)." Id. Following his arrest, on September 18, 2002, the defendant was charged in three separate informations with violating the terms of his probation, in violation of § 53a-32. "On March 20, 2003, a revocation of probation hearing was held in which the court found that the defendant had violated the conditions of his probation. The court revoked the defendant's probation and sentenced him to an effective term of two years incarceration, which was the maximum sentence for the violation." Id.

The defendant then appealed from the judgment of the trial court to the Appellate Court, claiming "that the [trial] court (1) improperly found violations of pro-

bation and (2) abused its discretion in revoking his probation." Id., 528. While the defendant's appeal before the Appellate Court was pending, "the defendant pleaded guilty to attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (5) and conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-59 (a) (5) . . . ." Id., 529–30. "The defendant was sentenced to six years incarceration with five years special parole to run concurrently with his outstanding sentence." Id., 530. On September 14, 2005, the Appellate Court dismissed as moot the defendant's first claim, that the trial court improperly had found violations of probation, because the defendant's guilty plea had "eliminat[ed] any controversy as to whether he had engaged in the criminal conduct that gave rise to his violation of probation." Id., citing *State* v. *Singleton*, 274 Conn. 426, 439, 876 A.2d 1 (2005).

The Appellate Court then turned to the defendant's only remaining claim on appeal, that the trial court had abused its discretion when it revoked the defendant's probation. *State* v. *Preston*, supra, 93 Conn. App. 530. The Appellate Court declined "to extend the holding in *Singleton* to claims challenging a court's exercise of discretion in revoking a defendant's probationary status [because] [t]hat issue was not addressed in *Singleton*." Id., 533. Nevertheless, the Appellate Court ultimately concluded that the defendant's challenge to the trial court's revocation of his probation was moot, in spite of the fact that practical relief might be available to the defendant, because "[t]here is no longer an actual controversy between the parties." Id., 534. The Appellate Court arrived at this conclusion because "[t]he defendant currently is serving a six year sentence and that sentence was imposed to run concurrently with the two year sentence that he received for the violations of probation. In addition, the defendant received jail

credit for the period of time served in connection with the revocation of probation judgments." Id. These appeals followed.

On appeal, the state challenges the rationale for the Appellate Court's determination that the defendant's appeal was moot. Specifically, the state claims that the Appellate Court improperly rejected the state's argument that the defendant's appeal from the revocation of his probation was moot because he had pleaded guilty to the underlying offenses.[4] The defendant challenges the Appellate Court's determination that his appeal from the judgment of the trial court revoking his probation is moot under the collateral consequences doctrine. We agree with the defendant.

We begin with the standard of review. "Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [this] court's subject matter jurisdiction . . . . We begin with the

---

[4] We note that the state was not aggrieved by the judgment of the Appellate Court, which was rendered in its favor. See *Seymour* v. *Seymour*, 262 Conn. 107, 110–11, 809 A.2d 1114 (2002); compare *State* v. *T.D.*, 286 Conn. 353, 359–60, 942 A.2d 1000 (2008) (state aggrieved where judgment upholding defendant's probation revocation was in state's favor, but fell short of relief sought; i.e., dismissal of appeal). Aggrievement is a prerequisite to this court's subject matter jurisdiction. See *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 443–44, 844 A.2d 836 (2004). Nevertheless, because the defendant takes issue with the Appellate Court's determination that his challenge to the trial court's exercise of discretion in the dispositional phase of the revocation of probation proceeding is moot, and the state contends that that determination should be affirmed on the alternate ground that the defendant's guilty plea eliminated any live controversy as to whether the revocation was proper, we may treat the state's claim in its appeal as an alternate ground to affirm the judgment of the Appellate Court in the defendant's appeal. See *Albahary* v. *Bristol*, 276 Conn. 426, 434 n.5, 886 A.2d 802 (2005) ("[w]e conclude that we need not determine in the present case whether the [state] was aggrieved because we may treat its claim as an alternate ground for affirmance"). We reach this conclusion, in part, because as was the case in *Albahary*, the parties in this case did not brief the issue of whether the state was aggrieved, and we are hesitant to render a decision on an issue that has not been briefed or argued.

four part test for justiciability established in *State* v. *Nardini*, 187 Conn. 109, 445 A.2d 304 (1982)." (Citations omitted; internal quotation marks omitted.) *Wallingford* v. *Dept. of Public Health*, 262 Conn. 758, 766, 817 A.2d 644 (2003). "Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Internal quotation marks omitted.) Id., 766–67.

"The mootness doctrine is rooted in the first factor of the *Nardini* test. . . . It is founded on the same policy interests as the doctrine of standing, namely, to assure the vigorous presentation of arguments concerning the matter at issue. . . . This court recently reiterated that the standing doctrine is designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . Indeed, we note that courts are called upon to determine existing controversies, and thus may not be used as a vehicle to obtain advisory judicial opinions on points of law. . . .

"[A]n actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Citations omitted; internal quotation marks omitted.) Id., 767.

I

We first turn to the state's claim that, although the Appellate Court properly dismissed the defendant's appeal as moot, it did so for improper reasons. The state contends that our decision in *Singleton* requires that, when a defendant challenges the outcome of both the evidentiary phase and dispositional phase of a revocation of probation hearing and subsequently pleads guilty to the underlying offense, the defendant's *entire* appeal is rendered moot. The state asserts that, under our decisions in *State* v. *Singleton*, supra, 274 Conn. 436–39, *State* v. *Daniels*, 248 Conn. 64, 70–73, 726 A.2d 520 (1999), and *State* v. *McElveen*, 261 Conn. 198, 216–18, 802 A.2d 74 (2002), a revocation of probation hearing is treated as a unitary proceeding. We disagree.

In order to address fully the state's position, it is helpful to review the principles governing revocation of probation hearings. We have recognized that revocation of probation hearings, pursuant to § 53a-32, are comprised of two distinct phases, each with a distinct purpose. See *State* v. *Faraday*, 268 Conn. 174, 185, 842 A.2d 567 (2004); *State* v. *Barile*, 267 Conn. 576, 578 n.3, 839 A.2d 1281 (2004); *State* v. *Hill*, 256 Conn. 412, 425, 773 A.2d 931 (2001).[5] In the evidentiary phase, "[a] factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made." (Internal quotation marks omitted.) *State* v. *Faraday*, supra, 185; see General Statutes § 53a-32 (a). In the dispositional phase, "[i]f a violation is found, a

---

[5] The United States Supreme Court also has recognized that revocation of probation hearings usually consist of an evidentiary phase and a dispositional phase. "In identifying the procedural requirements of due process, we have observed that the decision to revoke probation typically involves two distinct components: (1) a retrospective factual question whether the probationer has violated a condition of probation; and (2) a discretionary determination by the sentencing authority whether violation of a condition warrants revocation of probation." *Black* v. *Romano*, 471 U.S. 606, 611, 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985).

court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served." (Internal quotation marks omitted.) *State* v. *Faraday*, supra, 185; see General Statutes § 53a-32 (b). Our cases have involved claims that arose only from the evidentiary phase; see, e.g., *State* v. *Pecoraro*, 196 Conn. 305, 306, 493 A.2d 180 (1985) ("[t]he only issue raised by the defendant is whether, without evidence of the underlying facts, his convictions for crimes while on probation are a sufficient basis to establish a violation of the condition against transgressing any criminal law when those convictions are on appeal"); and claims that arose only from the dispositional phase. See, e.g., *State* v. *Fagan*, 280 Conn. 69, 104, 905 A.2d 1101 (2006) ("[T]he defendant concedes that the trial court correctly found that he had violated the conditions of his probation. He contends, however, that the trial court improperly revoked his probation and reinstated the six unexecuted years of his sentence for the 1999 conviction."), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007).

Moreover, we previously have recognized that the evidentiary and dispositional phases are governed by two different standards of review. *State* v. *Faraday*, supra, 268 Conn. 185–86; *State* v. *Hill*, supra, 256 Conn. 425–26. "In making its factual determination [during the evidentiary phase], the trial court is entitled to draw reasonable and logical inferences from the evidence. . . . Our review is limited to whether such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation

marks omitted.) *State* v. *Faraday*, supra, 185, quoting *State* v. *Hill*, supra, 425–26.

"The standard of review of the trial court's decision at the [dispositional] phase of the revocation of probation hearing is whether the trial court exercised its discretion properly by reinstating the original sentence and ordering incarceration. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Faraday*, supra, 268 Conn. 185–86, quoting *State* v. *Hill*, supra, 256 Conn. 426; accord *State* v. *Fagan*, supra, 280 Conn. 104–105. In the dispositional phase, "[t]he ultimate question [in the probation process is] whether the probationer is still a good risk . . . . This determination involves the consideration of the goals of probation, including whether the probationer's behavior is inimical to his own rehabilitation, as well as to the safety of the public." (Internal quotation marks omitted.) *State* v. *Fagan*, supra, 105, quoting *State* v. *Hill*, supra, 427.

The state contends that, despite the language of § 53a-32, the cases that have involved appeals from the distinct phases of a revocation of probation hearing, and the two distinct standards of review that we apply to these two phases, it is improper to distinguish between the two phases of a revocation of probation hearing when a challenge to the evidentiary phase is moot. The state contends that these cases stand for the proposition that, when a defendant appeals from a revocation of probation that is based on criminal conduct, a challenge to the sufficiency of the evidence of the violation and a challenge to the court's actual revocation present the same issue, namely, whether the trial court abused its discretion in revoking the defendant's probation, and

that this issue becomes moot when there is no live controversy as to whether the defendant violated his probation.

In support of this claim, the state primarily relies on our decision in *Singleton*. In *Singleton*, the defendant filed an appeal in the Appellate Court from the judgment of the trial court revoking his probation. *State* v. *Singleton*, supra, 274 Conn. 429. "[T]he defendant . . . claim[ed] that the state had not met its burden of establishing the violation of probation." Id. Following his appeal, the defendant pleaded guilty to the offense that served as the factual predicate to the trial court's determination that the defendant's probation had, in fact, been violated. Id., 429–30. The Appellate Court, without knowledge of the defendant's guilty plea; id., 430; "issued its decision, reversing the trial court's judgments for insufficient evidence and remanding the cases with direction to render judgments that the defendant was not in violation of the terms of his probation." Id., 429. The state then appealed from the judgment of the Appellate Court to this court. Id., 430.

In its appeal, the state argued that, under *McElveen*, the defendant's guilty plea rendered his challenge of the trial court's determination that he had violated the terms of his probation moot. Id., 436, citing *State* v. *McElveen*, supra, 261 Conn. 216–18 (when defendant has pleaded guilty to criminal conduct underlying violation of probation, defendant's claim on appeal that state failed to prove violation of probation is moot because no live controversy remains as to whether defendant had engaged in criminal conduct). In response, the defendant argued that, under *Daniels*, his appeal was not moot because practical relief was available in the dispositional phase. *State* v. *Singleton*, supra, 274 Conn. 436–37, citing *State* v. *Daniels*, supra, 248 Conn. 72–73 (when defendant has pleaded guilty to criminal conduct underlying violation of probation, defendant's claim on

appeal that state had not proved violation of probation is not moot because court could impose different sentence on remand). Thus, *Daniels* and *McElveen* reached inconsistent conclusions as to whether a defendant's challenge to the evidentiary phase of a revocation of probation hearing is rendered moot when the defendant, subsequent to the trial court's determination in the evidentiary phase, pleads guilty to the offense that served as the factual predicate for that determination.

To resolve this inconsistency, we were required in *Singleton* to "overrule the conclusion in *Daniels* that a subsequent conviction of criminal conduct arising out of the same facts underlying a violation of probation does not render the appeal from the violation of probation moot." *State* v. *Singleton*, supra, 274 Conn. 438. We concluded that, "[w]here, subsequent to a finding of violation of probation, a defendant is criminally convicted for the same conduct underlying the violation of probation, his appeal from that judgment of violation of probation is rendered moot because there is no longer any live controversy about whether he engaged in the conduct for which his probation was violated." Id., 439.

In the present case, the state argues that our conclusion in *Singleton* applies equally to the evidentiary and dispositional phases of the revocation hearing. In support of this claim the state relies on certain language in our decision in *McElveen* suggesting that the issue in that case was whether the trial court properly had revoked the defendant's probation.[6] A careful reading of *McElveen*, however, reveals that that is not the case.

---

[6] In *McElveen*, we stated: "[t]he defendant . . . appeals from the judgment of the trial court revoking his probation . . . ." *State* v. *McElveen*, supra, 261 Conn. 199. We also stated: "the trial court rendered judgment *revoking the defendant's probation*, having concluded that the defendant had attempted to rob [the victim]. *It is that judgment* that is at issue in this appeal." (Emphasis added.) Id., 217.

Although we did not directly address the merits of the defendant's appeal in *McElveen*, we stated that "the defendant appealed from the judgment of the trial court . . . claiming that the trial court improperly found that *the state had presented sufficient evidence to prove that the had violated the conditions of his probation.*" (Emphasis added.) *State* v. *McElveen*, supra, 261 Conn. 203. The defendant made no claim that, if this court determined that the trial court properly had found that he had violated his probation, then the judgment should be reversed nevertheless because the trial court abused its discretion in revoking probation. Accordingly, we conclude that *McElveen*'s holding applies only to the evidentiary phase of the revocation hearing.

Similarly, our decision in *Singleton*, overruling the holding of *Daniels* that a guilty plea in the underlying criminal case does not render moot a claim that the trial court improperly had revoked the defendant's probation, does not support the state's position. The only claims in *Daniels* were that the trial court improperly had: (1) found that the state had proved by a preponderance of the evidence that the defendant had violated his probation; and (2) admitted certain evidence of the defendant's guilt. *State* v. *Daniels*, supra, 248 Conn. 69. Again, there was no claim that the trial court abused its discretion in revoking the defendant's probation. Accordingly, our decision in *Singleton* merely stands for the proposition that, *in the absence of any such claim*, a guilty plea renders the entire appeal moot.

We conclude, therefore, that *Singleton* and *McElveen* do not answer the question that is presented by the state, namely, whether a circumstance that renders moot a claim arising from the evidentiary phase of a revocation of probation hearing also renders moot any claim arising from the dispositional phase of the hearing. We conclude that it does not. As we have indicated, the trial court's ruling in the dispositional phase is sub-

ject to review for abuse of discretion. We have recognized that, in exercising its discretion, the trial court is required to give the defendant's case individualized consideration, in light of the purpose of probation.[7] Although a finding of abuse of discretion during the dispositional phase will be rare when there is no live controversy as to whether the defendant violated his probation by committing a criminal offense,[8] affirmance of the trial court's judgment is not a foregone conclusion.[9] We conclude that, when the defendant has raised a claim that the trial court abused its discretion in rendering its judgment during the dispositional phase, practical relief is available even when there is no live

[7] "A revocation proceeding is held to determine whether the goals of rehabilitation thought to be served by probation have faltered, requiring an end to the conditional freedom obtained by a defendant at a sentencing that allowed him or her to serve less than a full sentence. . . . [T]he ultimate question [in the probation process is] whether the probationer is still a good risk . . . . This determination involves the consideration of the goals of probation, including whether the probationer's behavior is inimical to his own rehabilitation, as well as to the safety of the public." (Internal quotation marks omitted.) *State* v. *Fagan*, supra, 280 Conn. 105, quoting *State* v. *Hill*, supra, 256 Conn. 427.

[8] See *State* v. *Fagan*, supra, 280 Conn. 104–105 ("Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . A defendant who seeks to reverse the exercise of judicial discretion assumes a heavy burden." [Citation omitted; internal quotation marks omitted.]).

[9] The state argues that, because conviction of a felony is a permissible basis for revoking probation, any claim of abuse of discretion by the trial court is necessarily an "exercise in futility." In support of this proposition, the state contends that "[i]t is universally held that the commission of a felony violates a condition inherent in every probation order." *State* v. *Roberson*, 165 Conn. 73, 77, 327 A.2d 556 (1973); accord *State* v. *Fagan*, supra, 280 Conn. 106–107; *State* v. *Pecoraro*, supra, 196 Conn. 307. In essence, the state asks us to adopt a categorical rule based on one of many factors used by courts to determine whether a defendant should remain on probation or receive a different sentence after it is determined that the defendant violated a term of his probation. Although we have recognized that a criminal conviction alone may justify the revocation of probation, we never have held that the trial court's judgment in the dispositional phase is not subject to appellate review for abuse of discretion and we decline to do so now.

controversy as to whether the defendant committed the underlying offense and, therefore, the claim is not moot.

In the present case, the defendant claims that, even if the trial court properly had found that he violated his probation, the trial court abused its discretion in revoking his probation. Accordingly, we conclude that the Appellate Court properly determined that the defendant's guilty plea to the underlying criminal charges did not render moot his claim that the trial court improperly revoked his probation.

## II

We now turn to the defendant's claim that the Appellate Court improperly dismissed his appeal from the trial court's judgment revoking his probation because he will suffer collateral consequences as a result of the revocation. We agree.

"[U]nder this court's long-standing mootness jurisprudence . . . despite developments during the pendency of an appeal that would otherwise render a claim moot, the court may retain jurisdiction when a litigant shows that there is a reasonable possibility that prejudicial collateral consequences will occur." (Internal quotation marks omitted.) *Wallingford* v. *Dept. of Public Health*, supra, 262 Conn. 767. "[T]o invoke successfully the collateral consequences doctrine, the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must establish these consequences by more than mere conjecture, but need not demonstrate that these consequences are more probable than not. This standard provides the necessary limitations on justiciability underlying the mootness doctrine itself. Where there is no direct practical relief available from the reversal of the judgment, as in this case, the collateral consequences doctrine acts as a surrogate, calling for a determination whether a decision in the case can

afford the litigant some practical relief in the future." (Internal quotation marks omitted.) Id., 767–68. "The array of collateral consequences that will preclude dismissal on mootness grounds is diverse, and includes harm to a defendant's reputation as a result of the judgment at issue." *Putman* v. *Kennedy*, 279 Conn. 162, 169, 900 A.2d 1256 (2006); see, e.g., *Williams* v. *Ragaglia*, 261 Conn. 219, 227–31, 802 A.2d 778 (2002).

In *McElveen*, we noted that "a violation of probation carries consequences in connection with future involvement with the criminal justice system, beginning with [the defendant's] ability to obtain a favorable decision concerning preconviction bail. . . . [T]he failure to abide by conditions of probation is a relevant consideration in the trial court's decision when setting conditions of release. A defendant's past probation violation is equally relevant when considering whether to afford a convicted defendant future probation." (Citations omitted.) *State* v. *McElveen*, supra, 261 Conn. 213–15. In *State* v. *Smith*, 207 Conn. 152, 161, 540 A.2d 679 (1988), we recognized that a defendant's revocation of probation may "affect his standing in the community in its connotation of wrongdoing . . . ." In *State* v. *Johnson*, 11 Conn. App. 251, 256, 527 A.2d 250 (1987), the Appellate Court noted that "probation revocation is a blemish on [the defendant's] prison record which will affect his job opportunities and his standing in the community because it connotes wrongdoing and intractability and is a burden analogous and in addition to his criminal stigma." (Internal quotation marks omitted.) We conclude, therefore, that there is a reasonable possibility of prejudicial consequences flowing from the revocation of the defendant's probation, thereby precluding dismissal of his appeal on grounds of mootness.

The state asserts, however, that we should adopt the federal standard for collateral consequences, as articu-

lated by the United States Supreme Court in *Spencer* v. *Kemna*, 523 U.S. 1, 14–16, 118 S. Ct. 978, 140 L. Ed. 2d 43 (1998) (declining to extend presumption of collateral consequences to challenges of parole terminations because showing of possible harm is insufficient to save claim from being moot). In *McElveen*, however, we declined to adopt the federal standard adopted in *Spencer*, noting that "we would be required to disavow the many cases in which we have relied upon the reasonable possibility of future adverse collateral consequences to avoid a dismissal on mootness grounds . . . and . . . to overrule *State* v. *Smith*, supra, 207 Conn. 161." (Citation omitted.) *State* v. *McElveen*, supra, 261 Conn. 212. We decline the state's invitation to revisit that decision.

The judgment of the Appellate Court is reversed as to the defendant's claim that the trial court abused its discretion when it revoked his probation and the case is remanded to the Appellate Court for consideration of that claim.

In this opinion the other justices concurred.