******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JERZY G.*

(SC 19641)

Rogers, C. J., and Palmer, Eveleigh, McDonald, Espinosa and Vertefeuille, Js.

*Syllabus*

The defendant, a Polish citizen who had been charged with sexual assault in the fourth degree, appealed to the Appellate Court from the trial court's orders terminating his participation in a statutory (§ 54-56e) pretrial diversionary program of accelerated rehabilitation and ordering his rearrest, following his deportation from the United States for overstaying the term of his visitor's visa. At the hearing on the application for the diversionary program, the state brought to the court's attention that it had received information from United States Immigration and Customs Enforcement that the defendant had overstayed his visa and that it would commence removal proceedings if the defendant was convicted of the charge. The court did not reference the defendant's immigration status when it granted the defendant's application for accelerated rehabilitation in April, 2012, imposed a two year period of supervision with certain conditions, and released the defendant from custody. The court continued the case until 2014, when the period of probation would terminate upon successful completion of the program. The defendant was deported to Poland in August, 2012, and was prohibited from entering the United States for a period of ten years from his departure date. In November, 2013, when the defendant's deportation was brought to the trial court's attention, the court advanced the date for a determination of whether the defendant had successfully completed the terms of accelerated rehabilitation. Defense counsel asked the court to continue the case or to find that the defendant had successfully completed the program and to dismiss the criminal charge. The trial court found that the defendant had offered no proof that his deportation was solely a consequence of either his arrest, the pendency of the criminal charge or his entrance into the accelerated rehabilitation program, nor did he offer any proof of compliance with the conditions of participation in that program. The court ordered his rearrest and imposed as a condition of release that he post a $5000 bond. On appeal to the Appellate Court, the defendant claimed that the trial court had abused its discretion in denying his motion to dismiss the criminal charge or by refusing to continue the case until he could return to the state to complete the program. The Appellate Court, relying on *State* v. *Aquino* (279 Conn. 293), rejected the defendant's argument that the termination of accelerated rehabilitation gave rise to collateral consequences that could satisfy mootness concerns, concluding that, because the defendant had produced no evidence to establish that, in the absence of the termination of accelerated rehabilitation, he would be permitted to reenter, visit, or naturalize, the purported collateral consequences of the termination were too conjectural. The Appellate Court dismissed the defendant's appeal as moot and, therefore, did not reach the merits of the defendant's claims. On the granting of certification, the defendant appealed to this court. *Held* that the Appellate Court improperly dismissed the defendant's appeal as moot, the record having established that it was reasonably possible that the trial court's orders would give rise to prejudicial collateral consequences should the defendant seek to lawfully reenter the United States, from which the court could afford practical relief, and, accordingly, the case was remanded to the Appellate Court to consider the merits of the defendant's appeal; unlike in *Aquino*, the record here established the reason for the defendant's deportation and that this reason did not permanently bar him from reentering the United States, but only barred his reentry for ten years from the date of his departure, and the reasonably possible collateral consequences resulting from the trial court's orders included the fact that there was a pending criminal charge against the defendant that could be a significant factor in dissuading federal immigration officials from admitting him into the country, and that, even if he was admitted, he would be subject to arrest

upon entry, for which he would have to post bond in order to obtain release or be imprisoned.

Argued February 21—officially released July 11, 2017

*Procedural History*

Information charging the defendant with the crime of sexual assault in the fourth degree, brought to the Superior Court in the judicial district of Fairfield, where the court, *Iannotti, J.*, granted the defendant's application for accelerated rehabilitation; thereafter, the court, *Arnold, J.*, denied the defendant's motion to dismiss and terminated the order of accelerated rehabilitation, and the defendant appealed to the Appellate Court, *Gruendel, Mullins* and *Solomon, Js.*, which dismissed the appeal, and the defendant, on the granting of certification, appealed to this court. *Reversed; further proceedings.*

*Kelly Billings*, assistant public defender, with whom was *James B. Streeto*, senior assistant public defender, for the appellant (defendant).

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Marc R. Durso*, senior assistant state's attorney, for the appellee (state).

*James P. Sexton, Emily Graner Sexton* and *Marina L. Green* filed a brief for the Connecticut Criminal Defense Lawyers Association as amicus curiae.

*Anthony D. Collins*, *Meghann E. LaFountain* and *Yazmin Rodriguez* filed a brief for the American Immigration Lawyers Association as amicus curiae.

*Opinion*

McDONALD, J. In *State* v. *Aquino,* 279 Conn. 293, 298, 901 A.2d 1194 (2006), this court concluded that a deported defendant's challenge to the denial of his motion to withdraw his guilty plea was moot because, in the absence of evidence that the attendant conviction was the sole barrier to the deportee's ability to reenter the United States or to obtain naturalization, the court could not afford the deportee practical relief. In the present case, the Appellate Court concluded that, under *Aquino,* the appeal of the defendant, Jerzy G., from the trial court's order terminating his participation in an accelerated rehabilitation program and ordering his rearrest on the pending criminal charge was rendered moot by his deportation because the reason for his deportation was unrelated to that program or that charge. *State* v. *Jerzy G.,* 162 Conn. App. 156, 161, 164, 130 A.3d 303 (2015). We conclude that *Aquino,* properly construed, does not control the present case because the record establishes the reason for the defendant's deportation and there is a reasonable possibility that the trial court's orders would result in prejudicial collateral consequences. Accordingly, the Appellate Court improperly dismissed the defendant's appeal as moot.

The record reveals the following undisputed facts. The defendant is a citizen of Poland. In April, 2006, he entered the United States on a nonimmigrant B-2 visitor's visa, which authorized him to remain in this country for a period not to exceed six months. Approximately six years later, in January, 2012, the defendant was charged with one count of sexual assault in the fourth degree, a class A misdemeanor, in violation of General Statutes § 53a-73a (a) (2). The defendant filed an application for the pretrial diversionary program of accelerated rehabilitation, which vests the court with discretion to suspend criminal prosecution for certain offenses and to release the defendant to the custody of the Court Support Services Division for a specified period, subject to conditions the court deems appropriate. See General Statutes § 54-56e (a), (b) and (d). Upon successful completion of the program for the specified period, the defendant would be entitled to dismissal of the charge. See General Statutes § 54-56e (f). The state opposed the application.

At an April, 2012 hearing on the application, the state brought information to the court's attention that it had received from United States Immigration and Customs Enforcement (ICE) regarding the defendant's immigration status. ICE informed the state that the defendant had overstayed his visa. ICE indicated that it would commence removal proceedings if the defendant was convicted of the charge, but was uncertain about what would happen if he was not convicted. The state also informed the court that the complainant, an acquaintance of the defendant, had reported that the defendant

has a wife and children who are living in Poland.

Following argument, the trial court, *Iannotti, J.*, granted the defendant's application for accelerated rehabilitation and made no reference to the defendant's immigration status. The court made the requisite statutory findings that the offense was not serious and that the defendant was not likely to reoffend. See General Statutes § 54-56e (a) and (b). The court imposed the maximum statutory period of supervision, two years, and the following conditions: no contact with the complainant; mental health evaluation and treatment as deemed necessary; substance abuse (alcohol) evaluation and treatment as deemed necessary; and seek and maintain full-time employment. The court continued the case until April, 2014, when the two year period of probation would terminate upon successful completion of the program. Thereafter, the defendant was released from custody.

Between May and August, 2012, ICE took steps to remove the defendant from the United States. In May, the defendant was taken into custody by ICE after he was served with a notice to appear. The notice stated that he was subject to removal because he had remained in the United States for a period longer than permitted, without authorization. In June, a United States Immigration Court ordered his removal from the United States. Following that order, the United States Department of Homeland Security issued a notice to the defendant, warning him that he was prohibited from entering the United States for a period of ten years from his departure date because he had been found deportable under § 237 of the Immigration and Nationality Act; 8 U.S.C. § 1227 (2012); and ordered him removed from the United States. In August, 2012, the defendant was deported to Poland.

In November, 2013, the defendant's deportation was brought to the trial court's attention. Upon the request of the Department of Adult Probation, the court, *Arnold, J.*, advanced the date for a determination whether the defendant had successfully completed the terms of his accelerated rehabilitation from April, 2014, to November, 2013. At the hearing, the state sought termination of the program and requested an order for the defendant's rearrest. The defendant's public defender asked the court either to continue the case to allow further investigation or to find that the defendant had successfully completed the program and dismiss the criminal charge. Ultimately, following additional hearings, the court found that the defendant had failed to successfully complete the program, ordered his rearrest, and imposed as a condition of his release that he post a $5000 cash or surety bond.

The court explained its decision in a subsequent memorandum of decision, couching its reasoning in both jurisdictional and substantive terms. It noted that

the state had informed the court that the basis for the defendant's deportation was that he had overstayed his visa's term. It thus found that the defendant voluntarily had placed himself in jeopardy for deportation and was aware of this possibility when accelerated rehabilitation was ordered for the two year period. It found that the defendant had offered no proof that his deportation was solely a consequence of either his arrest, the pendency of the criminal charge, or his entrance into the accelerated rehabilitation program. The court further noted that the defendant had not offered any proof of compliance with the conditions of participation in that program. The trial court cited this court's decision in *Aquino* and concluded: "The immigration consequences of the defendant are collateral and beyond the control of this court. The court found that the defendant was unsuccessful in his completion of the . . . program and has terminated his participation in said program."

The defendant appealed to the Appellate Court, claiming that the trial court had abused its discretion by (1) denying his motion to dismiss the criminal charge, or (2) refusing to continue the case until he could return to the state to complete the program. *State* v. *Jerzy G.*, supra, 162 Conn. App. 158. The Appellate Court did not reach the merits of these claims, concluding that the appeal should be dismissed as moot. Id., 161. The court cited *Aquino* and its Appellate Court progeny as prescribing a rule under which the court cannot grant practical relief unless there is evidence that the challenged decision is the exclusive basis for the deportation. Id., 161–64. Because the defendant conceded that he was deported solely because he had overstayed his visa, a reason independent of his termination from the accelerated rehabilitation program, the Appellate Court reasoned that a favorable decision in his appeal could not afford the defendant practical relief with regard to his deportation. Id., 164–65. The Appellate Court rejected the defendant's argument that the termination of accelerated rehabilitation gave rise to collateral consequences that could satisfy mootness, namely, that the decision could prevent him from reentering this country, visiting this country, or seeking naturalization as a United States citizen. Id., 166. Again relying on *Aquino*, the court concluded that because the defendant had produced no evidence to establish that, in the absence of the termination of accelerated rehabilitation, he would be permitted to reenter, visit, or naturalize, the purported collateral consequences were too conjectural. Id., 166–67. The defendant's certified appeal to this court followed.[1]

On appeal to this court, both parties agree that *Aquino* is distinguishable from the present case. Their principal focus is on the fact that the deportee in *Aquino* had pleaded guilty to a deportable crime, whereas the defendant in the present case has not yet been convicted

of any crime but is subject to arrest should he reenter the United States. The parties disagree, however, whether the distinctions between the cases are material with respect to the applicability of *Aquino* to the present case. We conclude that *Aquino* does not apply to the present case. We further conclude that the trial court's orders in the present case gave rise to prejudicial collateral consequences from which this court can afford practical relief. Accordingly, the appeal is not moot.

It is well settled that "[a] case is considered moot if [the] court cannot grant the [litigant] any practical relief through its disposition of the merits . . . ." (Internal quotation marks omitted.) *Moraski* v. *Connecticut Board of Examiners of Embalmers & Funeral Directors*, 291 Conn. 242, 255, 967 A.2d 1199 (2009). Under such circumstances, the court would merely be rendering an advisory opinion, instead of adjudicating an actual, justiciable controversy. *Domestic Violence Services of Greater New Haven, Inc.* v. *Freedom of Information Commission*, 240 Conn. 1, 6, 688 A.2d 314 (1997). Because mootness implicates the court's subject matter jurisdiction, it raises a question of law subject to plenary review. *Moraski* v. *Connecticut Board of Examiners of Embalmers & Funeral Directors*, supra, 255.

In *State* v. *McElveen*, 261 Conn. 198, 802 A.2d 74 (2002), this court engaged in a comprehensive examination of the contours of the collateral consequences doctrine, which provides an exception to the traditional direct injury requirement of mootness. The defendant, Derek McElveen, was found to have violated the conditions of his probation on charges of failure to appear in the second degree due to his arrest in connection with an alleged attempt to commit robbery. Id., 203. McElveen appealed from the judgment revoking his probation and imposing a previously suspended sentence, claiming that there was insufficient evidence to prove that he had engaged in the criminal conduct deemed to violate his probation. Id. Mootness concerns arose because, while his appeal was pending, McElveen completed serving his sentence for the probation violation. Id. We concluded that the completed sentence did not render the appeal moot.[2] Id., 216.

The court began with core principles. "[A] case does not necessarily become moot by virtue of the fact that . . . due to a change in circumstances, relief from the actual injury is unavailable. We have determined that a controversy continues to exist, affording the court jurisdiction, if the actual injury suffered by the litigant potentially gives rise to a collateral injury from which the court can grant relief." Id., 205.

The court then surveyed cases in which it previously had found such prejudicial collateral consequences to exist and gleaned from them the following standard:

"[F]or a litigant to invoke successfully the collateral consequences doctrine, the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must establish these consequences by more than mere conjecture, but need not demonstrate that these consequences are more probable than not. This standard provides the necessary limitations on justiciability underlying the mootness doctrine itself. Where there is no direct practical relief available from the reversal of the judgment . . . the collateral consequences doctrine acts as a surrogate, calling for a determination whether a decision in the case can afford the litigant some practical relief in the future. The reviewing court therefore determines, based upon the particular situation, whether, the prejudicial collateral consequences are reasonably possible." Id., 208.

In addition to articulating for the first time a standard by which to assess collateral consequences, two other aspects of *McElveen* are noteworthy. First, the court rejected the state's argument that we should abandon our long-standing collateral consequences standard requiring a colorably present injury and instead adopt the federal standard requiring an injury-in-fact. Id., 208–209. The state had advocated for the approach taken in *Spencer* v. *Kemna*, 523 U.S. 1, 14–18, 118 S. Ct. 978, 140 L. Ed. 2d 43 (1998), wherein the United States Supreme Court determined that the petitioner's challenge to his parole revocation was rendered moot because he had completed his sentence during the pendency of the appeal. In *McElveen*, this court explained: "Unlike in the case of a criminal conviction, in which collateral consequences are presumed to exist, the court [in *Spencer*] determined that a revocation of parole is not presumed to carry detrimental consequences, and that the petitioner would be required to demonstrate the actual existence of collateral consequences to refute a finding of mootness. . . . Specifically, the court rejected the petitioner's assertions that his claim was not moot because his parole violation could be used to his detriment in a future parole proceeding or to increase the petitioner's sentence in a future sentencing proceeding; the court concluded that both claims were predicated on future violations of the law and were not, therefore, *necessary* collateral consequences. . . . The court also dismissed as too speculative the petitioner's contentions that his parole revocation could be used to impeach him if he were to appear as a witness or litigant in a future proceeding or as a defendant in a future criminal proceeding."[3] (Citations omitted; emphasis in original.) *State* v. *McElveen*, supra, 261 Conn. 211. This court rejected the approach in *Spencer* because it was based on justiciability requirements under article three of the United States constitution that do not constrain our courts, and because the reasoning in *Spencer* was not sufficiently

compelling to outweigh stare decisis considerations favoring adherence to our long-standing colorable injury standard. Id., 211–12. We have since renewed our disinclination to adopt the stricter federal standard for matters other than convictions. See *State* v. *Preston*, 286 Conn. 367, 383–84, 944 A.2d 276 (2008); see also *Williams* v. *Ragaglia*, 261 Conn. 219, 227, 802 A.2d 778 (2002) (rejecting argument that record must demonstrate that litigant "will or is likely to suffer specific, foreseeable collateral consequences stemming from the [challenged] decision" [emphasis omitted]).

The second notable aspect of *McElveen* was the court's approach to the question of whether there could be collateral consequences to overcome a charge of mootness even though granting relief would not remove similar prejudice remaining from other sources. Specifically, the court concluded that there was a reasonable possibility of prejudicial collateral consequences arising from the violation of probation because the record of that violation could negatively impact (1) the defendant's ability to obtain a favorable decision concerning preconviction bail should he have future involvement with the criminal justice system, (2) his standing in the community in light of the connotation of wrongdoing attendant to a violation of probation, and (3) his future employment prospects. *State* v. *McElveen*, supra, 261 Conn. 213–16. The court noted: "We recognize that the defendant's conviction of attempted robbery in the third degree—the criminal conduct at issue in the trial court's judgment revoking the defendant's probation—creates similar prejudicial collateral consequences. That conviction is but one more strike against the defendant and does not eliminate the collateral consequences arising from the judgment revoking his probation."[4] Id., 216 n.14.

The proposition that the challenged decision did not have to be the sole source of possible prejudice found support in the court's earlier decision in *Housing Authority* v. *Lamothe*, 225 Conn. 757, 765, 627 A.2d 367 (1993). In that case, the appeal of the defendant tenant from a summary judgment of eviction was deemed not to be moot after the defendant voluntarily vacated the premises during the pendency of the appeal in order to have sufficient time to relocate her family. Id. The court deemed prejudicial collateral consequences reasonably possible insofar as the eviction could adversely impact the defendant's eligibility for low income subsidized housing in the future. Id. The court squarely rejected the plaintiff landlord's argument that "because of other problems in the defendant's family, the judgment of eviction would not be the only consideration on which the housing authority might have relied in deciding against her with regard to any future application. We conclude that the existence of other criteria does not undermine the housing authority's ability to rely on the judgment of eviction from low income subsi-

dized housing as a basis for rejecting any future application." Id.

Against this backdrop, we turn to *Aquino*, the deportation case on which the trial court and the Appellate Court relied. The defendant, Mario Aquino, was a Guatemalan national who had illegally entered the United States and remained here as an illegal alien for many years before criminal charges were filed against him. *State* v. *Aquino*, supra, 279 Conn. 295. He initially entered a guilty plea under the *Alford* doctrine; *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); but later moved to withdraw the plea. *State* v. *Aquino*, supra, 294, 297. In the motion, Aquino claimed that his plea was not knowing and voluntary due to ineffective assistance of counsel, in that counsel only had advised him of the possibility, and not the certainty, of deportation as a result of the plea. Id., 297. The motion alleged that, when Aquino had entered the guilty plea, he had not understood the likelihood that he would be jeopardizing his continuing ability to reside in the United States and his ability to petition for naturalization. Id. The trial court denied the motion to withdraw the plea, and Aquino appealed from the judgment of conviction. Id. While his appeal was pending, Aquino was deported. Id., 298. The Appellate Court concluded that Aquino's deportation precluded practical relief from the direct injury arising from his conviction, but his appeal was not moot because there was a collateral injury from which the court could grant relief. *State* v. *Aquino*, 89 Conn. App. 395, 400, 401, 873 A.2d 1075 (2005). Drawing on the standard articulated in *McElveen*, the court explained: "The defendant argues that, as a collateral consequence of the denial of his motion to withdraw his plea, his ability to petition for naturalization will be gravely impaired. That contention is not mere speculation, but rather is a likely consequence of his guilty plea to the count of attempt to commit assault in the second degree. For that reason, we conclude that subject matter jurisdiction is not a bar to the defendant's present appeal." (Footnote omitted.) Id., 401. Nonetheless, the Appellate Court affirmed the trial court's judgment on the merits. Id., 410.

In the certified appeal that followed, this court concluded that the appeal was moot. *State* v. *Aquino*, supra, 279 Conn. 297, 299. The court explained: "[I]n the absence of any evidence that the defendant's guilty plea was the sole reason for his deportation, the defendant's appeal must be dismissed as moot. . . . There is no evidence in the record as to the reason for his deportation. If it was not the result of his guilty plea alone, then this court can grant no practical relief and any decision rendered by this court would be purely advisory." Id., 298. This court's response to the Appellate Court's collateral injury holding was relegated to a footnote, in which this court summarily dismissed that holding as follows: "The Appellate Court concluded that

the appeal was not rendered moot by the deportation because the defendant's ability to petition for naturalization would be gravely impaired by the guilty plea. . . . Just as there is no evidence in the record before us establishing the reason for the defendant's deportation, however, there is no evidence to suggest that, in the absence of the guilty plea, the defendant would be allowed to reenter this country or become a citizen." (Citation omitted.) Id., 298–99 n.3.

On its face, *Aquino* appears to be inconsistent with our collateral consequences jurisprudence. The opinion makes no express reference to "collateral consequences" or the "reasonable possibility" standard set forth in *McElveen*. Indeed, the suggestion that the defendant must produce evidence that he "would be allowed" to reenter this country or become a citizen; *State* v. *Aquino*, supra, 279 Conn. 298–99 n.3; seems to be in tension with that standard. Similarly, the suggestion that the guilty plea must be the sole reason for the deportation would seem to be in tension with statements in *McElveen* and *Lamothe* that it is not dispositive that similar prejudicial collateral consequences may remain from other sources from which this court cannot grant relief.

Nonetheless, the court must have been aware of the basis of the Appellate Court's decision, which expressly recited the reasonable possibility of collateral consequences as the governing standard. *State* v. *Aquino*, supra, 89 Conn. App. 405–406. Moreover, if this court had determined that this standard was inapplicable, it presumably would have explained the reason for doing so, given that this court has applied the standard in *McElveen* in numerous cases and varied circumstances, without exception. See *Rowe* v. *Superior Court*, 289 Conn. 649, 655, 960 A.2d 256 (2008) (summary judgment of criminal contempt); *State* v. *Preston*, supra, 286 Conn. 382 (violation of probation); *Putman* v. *Kennedy*, 279 Conn. 162, 169–70, 900 A.2d 1256 (2006) (domestic violence restraining order); *In re Allison G.*, 276 Conn. 146, 166–67, 883 A.2d 1226 (2005) (petition seeking adjudication of child neglect); *Wallingford* v. *Dept. of Public Health*, 262 Conn. 758, 761, 767–68, 817 A.2d 644 (2003) (agency's declaratory ruling finding jurisdiction over property); *Williams* v. *Ragaglia*, supra, 261 Conn. 221, 225–26 (foster care license).

There is, however, an important aspect of the court's reasoning in *Aquino* that can explain the holding in a manner that is consistent with earlier precedent. The court emphasized the lack of evidence in the record to establish the reason for Aquino's deportation and, conversely, to establish the lack of any impediment other than the guilty plea that would preclude Aquino's admission to the country. *State* v. *Aquino*, supra, 279 Conn. 298 and nn.2 and 3. Without that information, the court apparently deemed it impossible to determine

whether, even if Aquino prevailed on appeal and his conviction was reversed, such a decision would improve his chances of reentry into the country or naturalization. It is a settled principle under both federal and Connecticut case law that, if a favorable decision necessarily could not afford the practical relief sought, the case is moot. Thus, courts have held that when a conviction, other than the one being challenged, results in a deportee's *permanent* ban from reentering this country, the deportee cannot establish collateral injury even if the challenged conviction also is an impediment to reentry. See, e.g., *Perez* v. *Greiner*, 296 F.3d 123, 126 (2d Cir. 2002) ("because [the petitioner] is permanently inadmissible to this country due to his prior drug conviction, collateral consequences cannot arise from the challenged robbery conviction, and the petition is moot"); *St. Juste* v. *Commissioner of Correction*, 155 Conn. App. 164, 181, 109 A.3d 523 (concluding that appeal challenging assault conviction was moot because petitioner's earlier threatening conviction would bar his admission into country), cert. granted, 316 Conn. 901, 111 A.3d 470 (2015); *Quiroga* v. *Commissioner of Correction*, 149 Conn. App. 168, 174–75, 87 A.3d 1171 ("[e]ven if the immigration court had predicated its deportation order on the [challenged] larceny conviction exclusively, the petitioner still could not prevail" because his prior narcotics conviction would permanently bar admission), cert. denied, 311 Conn. 950, 91 A.3d 462 (2014). Such a circumstance is distinguishable from *McElveen* and *Lamothe* because, although there were other potential sources of prejudice in those cases, those sources were not necessarily dispositive regarding the collateral injury, unlike a conviction resulting in a permanent ban from admission into this country.[5] Cf. *Castle Apartments, Inc.* v. *Pichette*, 34 Conn. App. 531, 534, 642 A.2d 57 (1994) (The court explained that the appeal was moot because "[u]nlike *Lamothe*, the tenant here is barred from challenging the judgment of possession because she failed to file a motion to open or set aside that judgment in the trial court. Regardless of the result of this appeal, the summary process judgment will remain in effect."). We recognize that some Appellate Court cases understandably have construed *Aquino* to require the challenged decision to be the reason, and the only reason, for the deportation. See *Quiroga* v. *Commissioner of Correction*, supra, 173–74; *State* v. *Chavarro*, 130 Conn. App. 12, 18–19, 21 A.3d 541 (2011). Because that limited view renders that case inconsistent with a substantial body of case law, we opt for the construction that renders *Aquino* consistent with our mootness jurisprudence.[6]

With this view of *Aquino*, we turn to the present case. Unlike *Aquino*, the record establishes the reason for the defendant's deportation—overstaying the term of his visitor visa without permission to do so. Indeed, the defendant's deportation could not have been based in

any part on his state criminal charge because prosecution on that charge was suspended until the trial court terminated his accelerated rehabilitation following his deportation. The record also establishes that the ground for the defendant's removal does not permanently bar him from reentering the United States, but only bars his reentry for ten years from the date of his departure (almost one half of that period having already lapsed). Once that period expires, the ground for his removal imposes no legal impediment to reentry. Accordingly, *Aquino* does not control the present case.

We consider, therefore, whether there is a reasonable possibility of prejudicial collateral consequences as a result of the trial court's orders. We conclude that there is a reasonable possibility of prejudicial collateral consequences should the defendant seek to lawfully reenter the United States. The order for the defendant's arrest on a pending criminal charge would not bar his admission into the United States. See 8 U.S.C. §§ 1101 (a) (48) (A) and 1182 (a) (2) (2012). Nonetheless, the fact that there is a pending criminal charge against the defendant could be a significant factor in dissuading federal immigration officials from admitting him into the country, as such a decision would be discretionary. Should it not pose such an impediment to his return, the defendant would be subject to arrest upon entry into the United States. In order to obtain release, he would have to post a $5000 bond. If he was unable to do so, he would be imprisoned. All of these impediments could be removed, however, if the defendant was fully successful on the merits of his appeal.

We are not persuaded by the state's argument that in order to raise the existence of collateral consequences above mere speculation, a deported defendant must affirmatively evince an intent to reenter this country. We have not imposed a similar requirement in any other mootness case, even when a voluntary action by a litigant would expose him or her to the collateral consequences. See, e.g., *State* v. *McElveen*, supra, 261 Conn. 213 (future involvement with criminal justice system); *Housing Authority* v. *Lamothe*, supra, 225 Conn. 765 (application for subsidized housing). To the extent that the Appellate Court cited the defendant's statement during the first hearing on the application for accelerated rehabilitation that he wanted to go to Poland, that statement[7]—a non sequitur—cannot reasonably be interpreted to mean that he had no interest in ever returning to the United States if the legal impediments were removed. See *State* v. *Jerzy G.*, supra, 162 Conn. App. 166 n.5. The fact that the defendant resided in the United States for six years, overstaying the term of his six month visitor's visa, and the lack of evidence that he had planned to return to Poland but for his arrest and the disclosure of his immigration status suggest that his desire to return is a reasonable possibility.

The state's argument that we should deem this appeal moot to preserve the status quo because the state has a continued interest in bringing a defendant to trial is confounding. The state posits that "[i]f this court concludes that the appeal is not moot and that the status quo should not be maintained, such decision could encourage defendants to waive removal and appeal, rely on a successful appeal resulting in a termination of [accelerated rehabilitation], thus avoiding prosecution and thereafter being eligible for reentry having avoided a conviction." Putting aside the multiple conditions that would have to be met for such circumstances to arise, there is a fundamental flaw in this reasoning. If a defendant has successfully completed accelerated rehabilitation, he or she is statutorily entitled to dismissal of the criminal charge. Thus, the state's real concern is whether it is proper to conclude that the defendant has successfully completed accelerated rehabilitation when he has been deported prior to the termination of the period of supervision under the circumstances presented. By allowing the appeal to proceed on the merits, the state will have the opportunity to make its case on that issue.

Finally, we note that, although the defendant is *legally* entitled to a presumption of innocence on the pending criminal charge, his reputation is subject to the stain associated with an arrest for probable cause of having committed a sexual assault in the court of public opinion, should the pending charge come to light. Thus, if the defendant's appeal is deemed to be moot, he will have been deprived of the only avenue to remove that stain. See *Williams* v. *Ragaglia*, supra, 261 Conn. 233 ("[i]n recognition of the importance of one's good name, this court has determined, when addressing collateral consequences, that an action that stains one's reputation is an injury that the court can consider in determining whether it may grant practical relief").

Accordingly, we conclude that the present case is controlled by our traditional collateral consequences standard. The record establishes that the defendant's appeal is not moot because it is reasonably possible that prejudicial collateral injury will arise from the trial court's orders. Accordingly, the Appellate Court should consider the merits of the defendant's appeal on remand.

The judgment of the Appellate Court is reversed and the case is remanded for further proceedings.

In this opinion ROGERS, C. J., and PALMER, EVE-LEIGH and VERTEFEUILLE, Js., concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual assault, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

¹ We granted the defendant's petition for certification to appeal limited to the following issues: "1. Did the Appellate Court properly dismiss the defendant's appeal as moot under [*Aquino*]?"; and "2. If the answer to the first question is yes, should this court overrule [*Aquino*]?" *State* v. *Jerzy*

*G.*, 320 Conn. 919, 920, 132 A.3d 1093 (2016). We note that the state opposed the defendant's request for certification to appeal on the additional issue of whether the trial court abused its discretion in terminating the defendant's participation in accelerated rehabilitation, arguing that it would be improper for this court to do so because that claim had not been reached by the Appellate Court and is not inextricably linked to the mootness issue that the Appellate Court did decide. We declined to grant certification on the former issue.

[2] The court ultimately dismissed the appeal as moot due to an additional intervening event—the defendant pleaded guilty to attempt to commit robbery in the third degree while his appeal from the judgment revoking his probation was pending. *State* v. *McElveen*, supra, 261 Conn. 203, 217. The guilty plea to the same criminal conduct that gave rise to the finding of the violation of probation precluded this court from granting relief. Id., 217–18.

[3] The consequences of a parole violation that the court rejected in *Spencer* as too conjectural would be sufficient, however, to avoid mootness when a conviction was being challenged, because the presumption of collateral consequences would apply. See *Nowakowski* v. *New York*, 835 F.3d 210, 223 (2d Cir. 2016); see also footnote 4 of this opinion.

[4] This view conforms to federal mootness jurisprudence when a conviction is being challenged. See *Sibron* v. *New York*, 392 U.S. 40, 55–56, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968) ("New York expressly provides by statute that Sibron's conviction may be used to impeach his character should he choose to put it in issue at any future criminal trial . . . and that it must be submitted to a trial judge for his consideration in sentencing should Sibron again be convicted of a crime . . . . [W]e see no relevance in the fact that Sibron is a multiple offender. . . . A judge or jury faced with a question of character, like a sentencing judge, may be inclined to forgive or at least discount a limited number of minor transgressions, particularly if they occurred at some time in the relatively distant past. It is impossible for this [c]ourt to say at what point the number of convictions on a man's record renders his reputation irredeemable. And even if we believed that an individual had reached that point, it would be impossible for us to say that he had no interest in beginning the process of redemption with the particular case sought to be adjudicated." [Citations omitted; footnotes omitted.]).

The United States Court of Appeals for the Second Circuit has explained this case law in light of *Spencer*, noting that because a conviction is presumed to give rise to prejudicial collateral consequences, the court accepts a broader category of consequences that are less certain to occur as sufficient for purposes of avoiding mootness than other matters to which this presumption does not attach. See *Nowakowski* v. *New York*, 835 F.3d 210, 223–24 (2d Cir. 2016). The majority of federal courts treat this presumption as rebuttable, such that once the defendant identifies a collateral consequence, the burden shifts to the state to prove that there is " 'no possibility' " of that collateral consequence. Id., 224.

[5] We have no occasion in the present case to decide whether these Appellate Court cases were properly decided. Therefore, we need not consider the arguments of the amicus curiae American Immigration Lawyers Association regarding the various circumstances under which the basis for a deportation order may be reconsidered. We acknowledge these cases simply to distinguish the practical effect of an unchallenged conviction that permanently bars admission from a decision that does not have that effect.

[6] We note that *Aquino* appears to have placed the burden on the defendant to prove that there was no other bar to his admission into the country. We question whether, in light of the presumption of collateral consequences applied by this court, the burden should have shifted to the state to prove that there was no reasonable possibility that Aquino would have been barred from admission, similar to the burden shifting approach in the federal courts. See footnote 4 of this opinion. We leave that question, however, for another day.

[7] The statement was made in the following context, with the defendant aided by a Polish interpreter:

"The Court: If I grant you the program, do you agree to waive your rights under the speedy trial act and the totaling of the statute of limitations?

"The Defendant: I understand, but I would like to go to Poland.

* * *

"The Court: Well, that may happen, but it won't happen today."