******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JOSHUA PARKER
(AC 43344)

Bright, C. J., and Prescott and Alexander, Js.

*Syllabus*

The defendant appealed from the judgment of the trial court revoking his probation for his failure to pay restitution. The defendant had previously pleaded guilty to various offenses, including burglary and larceny, and was sentenced to probation. As a condition of his probation, the court ordered the defendant to make restitution in the amount of more than $18,000. Thereafter, he was charged with additional offenses and for violating certain terms of his probation, not involving the payment of restitution, to which he pleaded guilty. The trial court continued the defendant's probation. In the months that followed, the defendant paid a total of $850 in restitution. The state thereafter charged the defendant with violation of probation for failure to pay restitution. The trial court revoked the defendant's probation, having determined, on the basis of the defendant's prior statements made to the court at his first probation revocation hearing, that the defendant had the ability and the willingness to pay, and would make sufficient efforts to pay, but had failed to do so. On appeal, the defendant claimed, inter alia, that the trial court erred in revoking his probation without first finding that his failure to pay the restitution was wilful. *Held* that the trial court erred in revoking the defendant's probation for failure to make restitution payments, as that court did not apply the correct legal standard and erred in making an implicit finding of wilfulness: as a prerequisite to incarceration for the failure to pay restitution, the trial court was required to make explicit findings on the record that a defendant had the ability to pay and, if so, whether the failure to pay was wilful, and, if not, whether the defendant made sufficient bona fide efforts legally to acquire the resources to pay; even if the trial court interpreted the defendant's statements made one and one-half years earlier at the first probation revocation hearing as an admission that he had the ability to pay, the court was still required to inquire into the reasons for the defendant's failure to pay and whether he failed to make good faith efforts to acquire legally the resources to pay, the evidence did not logically support the conclusion that the defendant had the ability to pay restitution during his probationary period because there was no evidence that he had any source of income or other assets that could be applied toward restitution, the court did not take into consideration the actual efforts the defendant made to acquire the resources to pay during the probation period, instead, improperly basing its conclusion that the defendant violated probation on the mere fact that he expressed an intention to make sufficient efforts, and, accordingly, the court failed to make the necessary finding that the defendant's failure to pay was wilful.

Argued September 8—officially released November 24, 2020

*Procedural History*

Substitute information charging the defendant with two counts of violation of probation, brought to the Superior Court in the judicial district of Windham, geographical area number eleven, and tried to the court, *Chaplin, J.*; judgment revoking the defendant's probation, from which the defendant appealed to this court. *Reversed*; *further proceedings.*

*John L. Cordani*, assigned counsel, with whom, on the brief, was *Jenna M. Scoville*, for the appellant (defendant).

*Laurie N. Feldman*, deputy assistant state's attorney,

with whom, on the brief, were *Anne F. Mahoney*, state's attorney, and *Andrew J. Slitt*, assistant state's attorney, for the appellee (state).

*Opinion*

PRESCOTT, J. The defendant, Joshua Parker, appeals from the judgment of the trial court revoking his probation pursuant to General Statutes § 53a-32 and sentencing him to thirty months of incarceration. On appeal, the defendant claims that (1) the court improperly revoked his probation for failure to pay restitution without first making a finding that such failure to pay was wilful, as constitutionally required pursuant to *Bearden* v. *Georgia*, 461 U.S. 660, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983), and (2) the state introduced insufficient evidence to prove that the defendant wilfully refused to pay restitution. We agree that the court did not make the constitutionally requisite finding that the defendant's failure to pay restitution was wilful and, accordingly, we reverse the judgment of the trial court and remand the case for a new probation revocation hearing.

The following facts and procedural history are relevant to our resolution of this appeal. On November 25, 2015, the defendant, pursuant to a plea agreement, pleaded guilty under the *Alford* doctrine[1] to burglary in the third degree in violation of General Statutes § 53a-103, larceny in the third degree in violation of General Statutes § 53a-124, attempt to commit burglary in the third degree in violation of General Statutes §§ 53a-103 and 53a-49, and failure to appear in the first degree in violation of General Statutes § 53a-172. The trial court, *J. Fischer*, *J.*, canvassed the defendant and found that there was a factual basis for the guilty pleas and that they were knowingly and voluntarily made with the assistance of competent counsel. The trial court later sentenced the defendant, consistent with the plea agreement, to three years of incarceration on each docket[2], execution suspended, with two years of probation, to run concurrently. As a condition of probation, the court ordered the defendant to make restitution for verifiable out of pocket losses in both dockets. The amount of restitution was determined by the Office of Adult Probation to be $18,734.43.

In October, 2017, the defendant was charged with violation of probation pursuant to § 53a-32 after he was arrested for additional offenses. At the defendant's probation revocation hearing on January 18, 2018, he admitted to violating the terms of his probation and pleaded guilty to forgery in the second degree in violation of General Statutes § 53a-139 and to reckless driving in violation of General Statutes § 14-222.[3] As of the date of the hearing, the defendant had not made any payments toward the $18,734.43 in restitution that he owed. The basis for the violation of probation, however, was the new arrest and the new convictions. The defendant was represented by a public defender at this hearing and at every prior court proceeding related to this appeal.

Pursuant to a plea agreement, the court, *Newson, J.*, continued the defendant on probation, accepted his guilty pleas on the new offenses, and sentenced him to an additional five years of incarceration, execution suspended, with three years of probation for the forgery charge. The court ordered two special conditions of probation: (1) the defendant was not to operate any motor vehicle unless and until his operating privileges are validly reinstated by the Department of Motor Vehicles; and (2) the defendant must be either employed or making reasonable efforts to find full-time employment during the period of probation, unless he was involved in some sort of full-time educational or treatment program.[4] Additionally, the court stated that, "as to the probations that were continued, all of those conditions remain in full force and effect."

Between February 15 and May 18, 2018, the defendant paid a total of $850 in restitution, leaving a remaining balance of $17,884.43. On January 2, 2019, the state charged the defendant with two counts of violation of probation for failure to pay restitution.[5] The defendant denied the charges. A second probation revocation hearing was held on May 30, 2019. During the evidentiary phase of the hearing, the state called one witness, Probation Officer Amy Gile.

Officer Gile testified that she had been supervising the defendant's probation since approximately January or February, 2018. For the entirety of this time, the defendant was not employed. In addition to restitution, the defendant's other financial obligations included court-ordered child support for his daughter. The defendant spoke to Officer Gile many times about seeking employment. He told Officer Gile about a few positions that he was considering applying for, but she was unaware if he ever did so. Officer Gile never asked the defendant to show her any completed job applications. The defendant told Officer Gile that he was unable to find employment, and that he had to provide childcare for his daughter, which prevented him from working.

Officer Gile also testified that the defendant was placed in, and later "discharged . . . successfully" from, an alternative in the community program (AIC program) that assists people with a criminal record in finding a job. Specifically, the program helps participants build a resume, provides them with a list of employers that will hire people with a criminal record, and offers various online curricula. Officer Gile received monthly reports from the AIC program that indicated that the defendant's participation in the program was satisfactory.

Officer Gile further testified that she did not believe the defendant made bona fide efforts to acquire the resources to pay restitution. When asked, however, how she would make a determination as to whether someone

she was supervising had attempted to find employment, she responded, "[w]e'd put 'em in the AIC program for employment services." The defendant did not call any witnesses. The court, *Chaplin, J.*, found that the defendant had violated a condition of his probation by not making sufficient payments toward his restitution obligation, revoked the defendant's probation, and sentenced him to serve thirty months of incarceration.

In the court's oral ruling, which later was signed as its memorandum of decision, the court explained that the basis for its finding of a violation of probation was a colloquy between the court and the defendant at the defendant's first probation revocation hearing on January 18, 2018.[6] Specifically, the court stated that "as a point, the court is now just reiterating the basis for the court's understanding in making its decision rather than allowing . . . another opportunity for additional closing arguments. Noting that upon reviewing the exhibits provided to the court of the transcripts specifically, the court does find on the January 18th date of 2018, there was a violation of probation admission entered by [the defendant]. On that date, a new probation period began which is the probation for which we're before the court today. Considering that probationary period beginning that date, there's a conversation between the court at that time and [the defendant] . . . . Specifically . . . [the defendant] makes comments about the ability to extend the probation and that would afford him the opportunity to pay the $18,000, noting his difficulty paying that over a period of one year, and he indicated that he could actually pay that now that he had two years. . . .

"Judge Newson . . . then made comments to [the defendant] indicating that the difference between an impossibility to pay and difficulty paying are two different issues and that the result of not paying on the new period of probation after [the defendant] indicated he would be able to pay and he would be making sufficient efforts to pay. Indicating that he had the ability to pay and . . . had the willingness to pay demonstrates to . . . this court, that there was an understanding, based on [the defendant's] comments, that he had the ability to pay and would make sufficient efforts to achieve that and make those payments as required by the conditions of the probation that were discussed with him at that time, and he was thankful for having more time from that . . . probation to pay . . . the amount owed. Based upon that, the court finds . . . by the fair preponderance of the evidence that [the defendant] was, one, aware of the condition of probation of paying the restitution, at that time aware of the amount of probation required to be paid, and at this point, he has engaged in conduct that does not satisfy that condition and, in fact, he has violated that condition of probation in not making payments and that he has . . . made payments that total $850; however, that is not sufficient.

The court finds that he is in violation of the probation as to each file."

Judge Chaplin later granted the defendant's application for waiver of appellate fees and appointment of appellate counsel based on a finding that the defendant was indigent. This appeal followed.

In *Bearden* v. *Georgia*, supra, 461 U.S. 662, the United States Supreme Court recognized that it is impermissible to imprison a defendant who is on probation, solely because of his lack of financial resources. To do so "would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the [f]ourteenth [a]mendment [to the United States constitution]." Id., 672–73. This case asks us to decide whether the trial court improperly revoked the defendant's probation for failure to pay restitution without first making a finding that such failure to pay was wilful, as is constitutionally required pursuant to *Bearden*.[7] Specifically, the defendant argues that the court did not make a finding that he wilfully refused to pay restitution because the court (1) stated that "the state need only establish that . . . the probationer knew the condition and engaged in conduct that violated the condition," (2) based its finding that the defendant violated his probation on statements made by the defendant at his January 18, 2018 probation revocation hearing, which statements are immaterial to the issue of whether he violated his probation during the new probation period that began after that hearing, (3) never mentioned wilfulness in the context of discussing the defendant's January 18, 2018 statements, nor made any connection between those statements and its finding that the defendant wilfully refused to pay restitution in May, 2019, and (4) subsequently found the defendant indigent in connection with this appeal.

The state concedes that the trial court did not make an explicit finding of wilfulness, but contends that the court made an implicit finding, which is constitutionally sufficient. In support of that contention, the state points to the fact that (1) the parties told the court that wilfulness was the contested issue, (2) the court expressed understanding that the defendant was claiming that his failure to pay was not wilful, and (3) the defendant did not file a motion for articulation in the absence of which this court must presume that the trial court acted properly. In reply, the defendant maintains that the trial court did not make an implicit finding of wilfulness and, even if it did, an express finding is required to satisfy the defendant's fourteenth amendment rights to due process and equal protection.[8] We agree with the defendant that the court did not make a finding of wilfulness and, therefore, the judgment is set aside and the case is remanded for further proceedings. In addi-

tion, we hold that an explicit finding of wilfulness is required.

As a preliminary matter, we set forth principles of law pertaining to the revocation of probation for failure to pay restitution. "[R]evocation of probation hearings, pursuant to § 53a-32, are comprised of two distinct phases, each with a distinct purpose. . . . In the evidentiary phase, [a] factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made." (Citations omitted; internal quotation marks omitted.) *State* v. *Preston*, 286 Conn. 367, 375–76, 944 A.2d 276 (2008). "The state must establish a violation of probation by a fair preponderance of the evidence. . . . That is to say, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation." (Internal quotation marks omitted.) *State* v. *Durant*, 94 Conn. App. 219, 224, 892 A.2d 302 (2006), aff'd, 281 Conn. 548, 916 A.2d 2 (2007).

"In the dispositional phase, [i]f a violation is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served. . . . [The two phases] are governed by two different standards of review. . . . In making its factual determination [during the evidentiary phase], the trial court is entitled to draw reasonable and logical inferences from the evidence. . . . Our review is limited to whether such a finding was clearly erroneous. . . . The standard of review of the trial court's decision at the [dispositional] phase . . . is whether the trial court exercised its discretion properly by reinstating the original sentence and ordering incarceration." (Citations omitted; internal quotation marks omitted.) *State* v. *Preston*, supra, 286 Conn. 375–77.

In *Bearden* v. *Georgia*, supra, 461 U.S. 672, the United States Supreme Court held that the fourteenth amendment to the United States constitution requires that "in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer [wilfully] refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment . . . . If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the [s]tate's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay." In other words, "absent *evidence and findings* that the defendant was somehow responsible for the failure [to pay]" it is unconstitutional to revoke probation. (Emphasis added.) Id., 665.

As our Supreme Court has recognized in a related

context, "[t]he impact of indigency on a criminal defendant's liability to pay a fine is codified" in our rules of practice. (Internal quotation marks omitted.) *Molinas* v. *Commissioner of Correction*, 231 Conn. 514, 520, 652 A.2d 481 (1994). Specifically, Practice Book § 43-17 provides that "[n]o person shall be incarcerated as a result of failure to pay a fine unless the judicial authority first inquires as to the person's ability to pay the fine." In addition, Practice Book § 43-18 provides that "[t]he judicial authority may, upon a finding that the defendant is able to pay the fine and that the nonpayment is wilful, order the defendant incarcerated for nonpayment of the fine." Thus, in Connecticut, it has been acknowledged judicially, both in cases and through our adopted rules of practice, that a finding that a defendant had the ability to pay and wilfully failed to do so is a prerequisite to incarceration for the failure to pay a fine.

I

The defendant first claims that the trial court failed to make the requisite finding, pursuant to *Bearden*, that the defendant's failure to pay restitution was wilful. The state argues that the trial court made this finding implicitly, and that on appeal this court must presume that the trial court applied the correct legal standard. This issue presents a question of law and, therefore, it is subject to plenary review. See *Sosin* v. *Sosin*, 300 Conn. 205, 217, 14 A.3d 307 (2011) ("The interpretation of a trial court's judgment presents a question of law over which our review is plenary. . . . Effect must be given to that which is clearly implied as well as to that which is expressed." (Citations omitted; internal quotation marks omitted.)); see also *Jones* v. *State*, 328 Conn. 84, 106–107, 177 A.3d 534 (2018) (whether trial court correctly applied legal standard raises question of law subject to plenary review). Accordingly, we must decide whether the trial court's "conclusions are legally and logically correct and find support in the facts that appear in the record." *Missionary Society of Connecticut* v. *Board of Pardons & Paroles*, 278 Conn. 197, 201, 896 A.2d 809 (2006). "[I]t is well settled that, in the absence of a contrary indication, we must presume that the court applied the correct legal standard." *State* v. *Petersen*, 196 Conn. App. 646, 668, 230 A.3d 696, cert. denied, 335 Conn. 921, 230 A.3d 696 (2020); see also *State* v. *Cecil J.*, 291 Conn. 813, 827 n.12, 970 A.2d 710 (2009) ("in [the] absence of contrary evidence, we presume that the trial court . . . undertook the proper analysis of the law and the facts" (internal quotation marks omitted)).

In the present case, the trial court explicitly stated that the basis for its determination that the defendant had violated a condition of probation by failing to pay restitution was the defendant's statement on January 18, 2018, that the continuation of extension of his probation "will help me pay the [restitution] . . . . So now

I can actually pay it." See footnote 6 of this opinion. The trial court explained that this amounted to an "[indication] that he could actually pay." The court then reiterated that the defendant had indicated that he "would be able to pay and he would be making sufficient efforts to pay" and, further, such indication that "he had the ability to pay and . . . had the willingness to pay *demonstrates* to the court . . . that he had the ability to pay and would make sufficient efforts to achieve that and make those payments . . . ." (Emphasis added.)

The court's reasoning in this regard implies that it did not correctly apply the legal standard. Specifically, the trial court cannot make the constitutionally requisite finding that the defendant was at fault for the failure to pay restitution unless it determines that the defendant, *at the time he failed to make the required payments*, either had the ability to pay and wilfully chose not to, or, that the defendant did not have the ability to pay and "failed to make sufficient bona fide efforts legally to acquire the resources to pay." *Bearden* v. *Georgia*, supra, 461 U.S. 672; see *State* v. *Pieger*, 240 Conn. 639, 653 n.7, 692 A.2d 1273 (1997) ("it is well settled that the defendant's probation could not be revoked based upon his nonpayment . . . unless the trial court first determined that he was able to pay the money *and* that his nonpayment was wilful" (emphasis added)).

Here, the trial court concluded that the defendant had the ability to pay based on the defendant's statement on the first day of his probationary period, which, in context, is best understood as an expression of an intention to pay going forward, rather than an admission that he had the actual ability to pay. In fact, it can reasonably be inferred that the defendant's January 18, 2018 statement that he had the ability to pay $18,000 in restitution at that time was aspirational because, at that hearing, he was still represented by a public defender, reflecting his indigent status. See *Moscone* v. *Manson*, 185 Conn. 124, 131 n.3, 440 A.2d 848 (1981) ("[a]lthough the record does not expressly indicate the petitioner's indigency, we can infer that fact from his continued legal representation by public defenders").

Nevertheless, even if the defendant's statement could be taken as an admission that, on January 18, 2018, he had sufficient financial resources to make restitution payments, the court was still required to "inquire into the reasons for the [defendant's] failure to pay" more than the $850 that he paid in the months that followed. *Bearden* v. *Georgia*, supra, 461 U.S. 672. Whether the defendant had the actual ability to pay or had failed to make good faith efforts to acquire legally the resources to pay throughout the duration of the probation period is an indispensable aspect of this inquiry. There could have been many intervening events that impacted the defendant's ability to pay or his efforts to acquire legally

the resources to pay, and *Bearden* mandates that the court take into consideration any such events. Moreover, the fact that, when "reiterating the basis for the court's understanding in making its decision," the court pointed only to the defendant's stated ability to pay, which was made nearly one and one-half years prior, indicates that the trial court did not apply the requisite legal standard. Relying on the defendant's earlier statement at the beginning of his probationary period that he can actually pay cannot substitute for an inquiry at the time the state seeks to revoke his probation into whether he had the means to pay or had failed to make sufficient bona fide efforts legally to acquire the resources to pay.

Here, the evidence does not logically support the conclusion that the defendant had the ability to pay restitution during his probationary period because there is no evidence that he had any source of income. He was not employed since at least January or February, 2018. There was no evidence that he had other assets that could be applied toward restitution. In addition, his expenses included court-ordered child support for his daughter and his own basic needs.[9]

Furthermore, to the extent that the court's memorandum of decision can be read as finding that the defendant "failed to make sufficient bona fide efforts legally to acquire the resources to pay"; *Bearden* v. *Georgia*, supra, 461 U.S. 472; the evidence did not logically support such a conclusion.[10] Because the court's references to "sufficient efforts" in its decision are framed in terms of future conduct (i.e., "[the defendant] indicated . . . he would be making sufficient efforts to pay" and "that he . . . would make sufficient efforts to achieve that and make those payments as required by the conditions of probation"), the court's logic suffered from the same defect as it did with regard to the defendant's ability to pay. That is, the court did not take into consideration the actual efforts the defendant made to acquire legally the resources to pay during the probation period. Rather, it based its conclusion that the defendant violated probation on the mere fact that he expressed an intention to make sufficient efforts and erroneously inferred that, because he ultimately did not pay more than $850, he must not have honored that intention. That is not the constitutionally requisite inquiry under *Bearden*.

Furthermore, the evidence in the record of what the defendant actually did during the probationary period indicates that he made efforts to acquire legally the resources to pay. Specifically, he was placed in the AIC program to help him find employment, his participation was reported to be satisfactory, and he was ultimately "discharged successfully" from the program. He also told Officer Gile about a few positions for which he was considering applying. Whether those efforts could

be deemed "sufficient" and "bona fide" is a factual determination for the trial court to make. We are not persuaded, however, based on our interpretation of the trial court's memorandum of decision, that the court actually made that determination. Accordingly, it did not apply the correct legal standard.

Our conclusion is further supported by the court's statement that, "in fact, [the defendant] has violated that condition of probation *in not making payments* and that he has made one payment or has made payments that total $850; however, that is not sufficient." (Emphasis added.) This suggests that the court's focus was on the fact that the defendant did not pay, not on whether he had the ability to pay and wilfully refused to do so, or did not have the ability to pay and failed to make sufficient bona fide efforts legally to acquire the resources to pay. See *Bearden* v. *Georgia*, supra, 461 U.S. 672.

Our decision in *State* v. *Martinik*, 1 Conn. App. 70, 467 A.2d 1247 (1983), likewise supports a conclusion that the court did not make the necessary finding that the defendant's failure to pay was wilful. In that case, just as here, the trial court revoked the defendant's probation for failure to make restitution payments. See id., 71. Specifically, the trial court stated that revocation was appropriate "because of the defendant's complete lack of cooperation with his probation officer in making the restitution payments." (Internal quotation marks omitted.) Id. This court, applying *Bearden*, held that the trial court did not make an appropriate finding regarding wilfulness or review alternative punishments and, accordingly, set aside the judgment and remanded the case for further proceedings. Id., 72. As the defendant points out, despite the fact that the trial court in *Martinik* was silent on the issue of wilfulness, this court did not presume that the court applied the correct legal standard and made an implicit finding of wilfulness. It concluded, as we do here, that the court did not make the requisite finding.

Because we conclude that the trial court's judgment should be set aside for failure to make a finding of wilfulness, it is not necessary to reach the defendant's second claim that the state introduced insufficient evidence to prove that the defendant wilfully refused to pay restitution.[11]

## II

Even if we were to conclude that the court made an implicit finding that the defendant's failure to pay restitution was wilful, we next consider whether a trial court in Connecticut is required to make an *explicit* finding on the record that a defendant's failure to pay restitution is wilful, before revoking probation. Neither the United States Supreme Court nor our Supreme Court explicitly has addressed this issue. The principles

articulated in these cases, however, lead us to the conclusion that an explicit finding is required to satisfy the defendant's fourteenth amendment rights.[12]

As our Supreme Court acknowledged in *State* v. *Hill*, 256 Conn. 412, 421, 773 A.2d 931 (2001), the holding in *Bearden* "was grounded on the court's sensitivity to the treatment of indigents in the criminal justice system and its recognition of the due process and equal protection concerns that the indigence of a defendant raises." Moreover, probation itself, "once granted, is a constitutionally protected interest. The due process clause of the fourteenth amendment to the United States constitution requires that certain minimum procedural safeguards be observed in the process of revoking the conditional liberty created by probation. . . . This is so because the loss of liberty entailed is a serious deprivation requiring that the [probationer] be accorded due process." (Citations omitted; internal quotation marks omitted.) *State* v. *Davis*, 229 Conn. 285, 294, 641 A.2d 370 (1994).

The United States Supreme Court has recognized that, among the minimum procedural safeguards that must be observed in a proceeding to revoke probation, is the requirement of "a written statement by the [fact finders] as to the evidence relied on and the reasons for revoking [probation or] parole." (Internal quotation marks omitted.) *Gagnon* v. *Scarpelli*, 411 U.S. 778, 786, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973), citing *Morrissey* v. *Brewer*, 408 U.S. 471, 489, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972).[13] "The written statement required by *Gagnon* and *Morrissey* helps to insure accurate [fact-finding] with respect to any alleged violation and provides an adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence." *Black* v. *Romano*, 471 U.S. 606, 613–14, 150 S. Ct. 2254, 85 L. Ed. 2d 636 (1985).

Moreover, in *Turner* v. *Rogers*, 564 U.S. 431, 444–45, 131 S. Ct. 2507, 180 L. Ed. 2d 452 (2011), the United States Supreme Court addressed the issue of whether the due process clause grants an indigent defendant a right to state appointed counsel at a civil contempt proceeding, which may lead to his or her incarceration. Id., 441. The court explained that, in such cases, like in probation revocation proceedings for failure to pay restitution, "the critical question likely at issue . . . [concerns] the defendant's ability to pay." Id., 446. In its analysis, the court considered "the distinct factors that . . . [it] has previously found useful in deciding what specific safeguards the [c]onstitution's [d]ue [p]rocess [c]lause requires in order to make a proceeding fundamentally fair." (Internal quotation marks omitted.) Id., 444, citing *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). Those factors are: "(1) the nature of the private interest that will be affected, (2) the comparative risk of an erroneous

deprivation of that interest with and without additional or substitute procedural safeguards, and (3) the nature and magnitude of any countervailing interest in not providing additional or substitute procedural requirement[s]." (Internal quotation marks omitted.) *Turner* v. *Rogers*, supra, 444–45.

The private interest at issue in *Turner* was the same as it is here: "an indigent defendant's loss of personal liberty through imprisonment." Id., 445. The court reasoned that "[t]he interest in securing . . . freedom from bodily restraint, lies at the core of the liberty protected by the [d]ue [p]rocess [c]lause. . . . And we have made clear that its threatened loss through legal proceedings demands due process protection. . . . Given the importance of the interest at stake, it is obviously important to ensure accurate [decision-making] in respect to the key ability to pay question." (Citations omitted; internal quotation marks omitted.) Id. The court then proceeded to identify procedural safeguards that "can significantly reduce the risk of an erroneous deprivation of liberty," one of which is "an express finding by the court that the defendant has the ability to pay." Id., 447–48.

In light of the constitutional significance of the interests at stake when a trial court considers revoking probation for the failure to pay restitution, it is imperative that the court engages in the requisite inquiry into the reasons for the failure to pay, and makes accurate "findings" regarding whether the defendant was "somehow responsible for the failure." *Bearden* v. *Georgia*, supra, 461 U.S. 665. If these findings are not made on the record, it is more difficult to review on appeal the soundness of the court's decision, as the present case illustrates. Both the probationer and the state have an interest in assuring that the probationer is not unjustifiably deprived of his liberty. See *Black* v. *Romano*, supra, 471 U.S. 621 (Marshall, J., concurring) ("[I]n choosing probation, the [s]tate expresses a conclusion that its interests will be met by allowing an individual the freedom to prove that he can rehabilitate himself and live according to the norms required by life in a community. *Bearden* then recognizes that, once this decision is made, both the [s]tate and the probationer have an interest in assuring that the probationer is not deprived of this opportunity without reason."); see also *Gagnon* v. *Scarpelli*, supra, 411 U.S. 785–86 ("[b]oth the probationer . . . and the [s]tate have interests in the accurate finding of fact and the informed use of discretion— the probationer . . . to insure that his liberty is not unjustifiably taken away and the [s]tate to make certain that it is neither unnecessarily interrupting a successful effort at rehabilitation nor imprudently prejudicing the safety of the community"). We therefore hold that the trial court is required to make explicit findings on the record as to whether the probationer had the ability to pay and, if so, whether the failure to pay was wilful,

and, if not, whether the probationer made sufficient bona fide efforts legally to acquire the resources to pay.

This holding is consistent with appellate courts in other states that have persuasively held that, in probation revocation proceedings for the failure to pay restitution, trial courts are required to make explicit findings regarding whether the defendant was able to pay restitution and whether the failure to pay was wilful. See *Del Valle* v. *State*, 80 So. 3d 999, 1011 (Fla. 2011) ("To comply with the rules set forth in *Bearden* and *Stephens* [v. *State*, 630 So. 2d 1090 (Fla. 1994)], trial courts must inquire into a probationer's ability to pay *and* make an explicit finding of [wilfulness] . . . . We emphasize that the probationer's ability to pay is an element of [wilfulness] in the context of determining whether there is a [wilful] violation for failure to pay a monetary obligation as a condition of probation." (Emphasis in original.)); *Commonwealth* v. *Marshall*, 345 S.W.3d 822, 824 (Ky. 2011) ("We . . . reconfirm the principle of due process that the trial court must make clear findings on the record specifying the evidence relied upon and the reasons for revoking probation. This requirement specifically includes findings about whether the defendant made sufficient bona fide efforts to make payments."); *State* v. *Parsons*, 717 P.2d 99, 102–103 (N.M. App. 1986) ("Was the trial court required to adopt findings of fact or indicate in the record its determination of whether defendant had the ability to pay sums ordered and whether defendant's failure to pay was [wilful]? We answer the question in the affirmative."). But see *United States* v. *Mitchell*, 317 Fed. Appx. 963, 965 (11th Cir. 2009) ("[A]lthough the district court did not explicitly state that [the defendant's] behavior was [wilful], it did find that [the defendant] made a mockery of supervised release. The record thus reveals that the district court implicitly found [the defendant's] failure to pay to be [wilful] and that [the defendant] did not make a bona fide effort to acquire resources to pay the fee."); *State* v. *Brady*, 300 P.3d 778, 780 (Utah App. 2013) ("These comments by the trial court illustrate its implicit finding of [wilfulness]. [The probationer] argues that an explicit finding is mandatory. We disagree.").

The judgment is reversed and the case is remanded for a new probation revocation hearing.

In this opinion the other judges concurred.

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] There were two separate dockets in this case, both in the judicial district of Windham. The first docket, Docket No. CR-14-0152726-S, included the charges of burglary in the third degree and larceny in the third degree. The second docket, Docket No. CR-14-0152727-S, included the charges of attempt to commit burglary in the third degree and failure to appear in the first degree.

[3] The guilty plea to forgery in the second degree was made pursuant to the *Alford* doctrine.

[4] The court did not order restitution with respect to the forgery or to the reckless driving conviction.

[5] Specifically, the state alleged that the defendant violated his probation

in that he "has not made a restitution payment since May 18, 2018."

[6] The relevant portion of that exchange is as follows:

"The Court: . . . [A]nything you want to say before the court imposes sentence?

"[The Defendant]: Yeah. That I just appreciate the opportunity to, you know, extend my probation; it will help me pay the eighteen thousand 'cuz it was a pretty penny to pay over one year, two years and it was impossible. So now I can actually pay it, so—

"The Court: He didn't pay anything?

"[The Prosecutor]: Not as of October of—not as of the first eleven months of his probation.

"The Court: Okay. Well . . . I'll put it to you this way: I don't get involved and I don't know the facts and circumstances of the case and I imagine there was something worthwhile by . . . the state's bothering to put you back on probation. But, there's a difference between it being difficult to pay back your obligation and doing nothing. Nothing's what you did. People get sent to prison for doing nothing when it comes to paying back their restitution obligations. So [it] appears you need to take this entire thing a little more seriously and start making some dent in your obligation because you need to understand that if you come back again, regardless of what the lawyers do, the court does not have to take their deal, if it doesn't want to. Do you understand that?

"[The Defendant]: Oh, I understand, yes.

"The Court: My two cents would be [for] you [to] go to prison today for not paying anything and picking up new charges like this. So take the opportunity. I don't—take you at your word you take it seriously; but you know the old saying, actions speak a lot louder than words."

[7] The defendant asserts that his claims are preserved because, during the revocation hearing, defense counsel brought to the trial court's attention the fact that it must find that the defendant wilfully refused to pay restitution before revoking his probation. Alternatively, the defendant argues that because his claims are constitutional in nature, they are reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). We conclude that the claims are preserved and the state does not argue otherwise.

[8] As the court acknowledged in *Bearden*, "due process and equal protection principles converge in the [c]ourt's analysis" in cases involving indigents in the criminal justice system. *Bearden* v. *Georgia*, supra, 461 U.S. 665. Specifically, in the context of a defendant whose probation has been revoked for failure to pay restitution, the court explained "[t]here is no doubt that the [s]tate has treated the petitioner differently from a person who did not fail to pay the imposed fine and therefore did not violate probation. To determine whether this differential treatment violates the [e]qual [p]rotection [c]lause, one must determine whether, and under what circumstances, a defendant's indigent status may be considered in the decision whether to revoke probation. This is substantially similar to asking directly the due process question of whether and when it is fundamentally unfair or arbitrary for the [s]tate to revoke probation when an indigent is unable to pay the fine." Id., 665–66.

[9] We note that the state generally bears the burden of establishing a violation of probation by a fair preponderance of the evidence. See *State* v. *Davis*, 229 Conn. 285, 295, 641 A.2d 370 (1994). When the alleged probation violation is the failure to pay restitution, however, there is no clear Connecticut authority with regard to whether the state bears the burden of proving that the defendant wilfully failed to pay, or whether the defendant has the burden of raising and proving inability to pay as a defense. *Bearden*, itself, simply states that in revocation proceedings, the court "must inquire into the reasons for the failure to pay." *Bearden* v. *Georgia*, supra, 461 U.S. 672.

We conclude that the burden is properly on the state to demonstrate that the defendant had the ability to pay and wilfully refused to do so or failed to make sufficient bona fide efforts legally to acquire the resources to pay, for several reasons. First, the state has the ultimate burden of proving a violation. The term violation denotes unlawful conduct, and if the defendant's failure to pay restitution is not wilful, it cannot be considered unlawful conduct because the state cannot punish a person solely on the basis of his poverty. See id.. Additionally, the state should bear the burden of proving wilfulness because probation revocation proceedings, although civil in nature, implicate the defendant's liberty interest.

[10] We note, however, that even if the defendant had the ability to pay restitution, a determination would still need to be made regarding whether

his failure to pay was wilful. In other words, ability to pay is a necessary prerequisite to a finding of wilfulness, but it is not, in itself, sufficient to conclude that the failure to pay was wilful.

[11] Unlike in the criminal context, where we would ordinarily address a claim of insufficiency of the evidence as a preliminary matter because double jeopardy principles dictate that "if we were to rule that the evidence was insufficient, the defendant would be entitled to an acquittal rather than a new trial" (internal quotation marks omitted); *State* v. *Gray*, 200 Conn. 523, 535–56, 512 A.2d 217, cert. denied, 497 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986); it is unnecessary to do so here because those same concerns do not apply in the probation revocation proceeding context. See *State* v. *Davis*, 229 Conn. 285, 295, 641 A.2d 370 (1994) ("Although a [probation] revocation proceeding must comport with the requirements of due process, it is not a criminal proceeding. . . . It therefore does not require all of the procedural components associated with an adversary criminal proceeding." (Citations omitted; internal quotation marks omitted.)).

[12] We reach this issue because it is germane to the controversy and provides an independently sufficient basis to reverse the trial court's decision. See *Cruz* v. *Montanez*, 294 Conn. 357, 377, 984 A.2d 705 (2009) ("[I]t is not dictum . . . when a court . . . intentionally takes up, discusses and decides a question germane to, though not necessarily decisive of, the controversy. . . . Rather, such action constitutes an act of the court [that] it will thereafter recognize as a binding decision." (Internal quotation marks omitted.)).

[13] In *Gagnon* v. *Scarpelli*, supra, 411 U.S. 782, the court held that the due process requirements established for parole revocation proceedings were also applicable to probation revocation proceedings.

---