******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# STATE OF CONNECTICUT v.
# CHARLES GAMER, JR.
## (AC 44179)

Bright, C. J., and Moll and Pellegrino, Js.

*Syllabus*

The defendant, who had been on probation in connection with his conviction of larceny in the first degree, appealed to this court from the judgment of the trial court revoking his probation. As a special condition of his probation, the trial court ordered the defendant to make restitution for verifiable out-of-pocket losses of the complainants in the amount of $227,642. During the defendant's five year probationary period, the defendant paid a total of $2100 in restitution in $100 monthly payments only when he was working. Following a violation of probation hearing, the court found that the state had proved that the defendant violated the restitution condition of probation by wilfully failing to pay restitution, stating that the defendant intentionally delayed trying to repay the restitution in the hope that his probationary period would expire. On the defendant's appeal to this court, *held*:

1. The defendant could not prevail on his claim that the evidence was insufficient to establish that he wilfully failed to pay restitution: the trial court's finding that the defendant did not make sufficient bona fide efforts to acquire the resources to pay restitution was not clearly erroneous, as there was ample evidence in the record to support such a finding; moreover, the court relied on the defendant's decision to strictly make $100 restitution payments and to do so only in the months that he was working, the defendant's testimony regarding his belief that he should not have to pay the restitution, the defendant's failure to apply to certain positions with potential employers because of his belief that he would not be hired there and testimony from a chief probation officer detailing meetings with the defendant regarding his restitution obligations, including the defendant telling him that he was going to apply for a loan and subsequently failing to provide any documentation showing that he had applied for such loan.

2. The trial court did not abuse its discretion in revoking the defendant's probation and sentencing him to a term of incarceration, this court having concluded that an abuse of discretion was not manifest or injustice did not appear to have been done: the trial court conducted the proper inquiry and found that the defendant wilfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay restitution prior to revoking his probation and sentencing him to imprisonment; moreover, the court's reasoning in revoking the defendant's probation and imposing an additional term of incarceration made it clear that it necessarily believed the defendant's behavior to be inimical to the goals of his probation and that the rehabilitative purpose of probation could no longer be served.

Argued January 6—officially released September 20, 2022

*Procedural History*

Information charging the defendant with violation of probation, brought to the Superior Court in the judicial district of Stamford-Norwalk, geographical area number twenty, where the matter was tried to the court, *McLaughlin, J.*; judgment revoking the defendant's probation, from which the defendant appealed to this court. *Affirmed*.

*James B. Streeto*, senior assistant public defender, with whom, on the brief, was *Meaghan C. Kirby*, certified legal intern, for the appellant (defendant).

*Laurie N. Feldman*, assistant state's attorney, with whom, on the brief, were *Paul J. Ferencek*, state's attorney, and *Elizabeth K. Moran*, assistant state's attorney, for the appellee (state).

*Opinion*

MOLL, J. The defendant, Charles Gamer, Jr., appeals from the judgment of the trial court revoking his probation pursuant to General Statutes § 53a-32[1] and sentencing him to three years of incarceration. On appeal, the defendant principally claims that (1) there was insufficient evidence to support the court's finding that he wilfully failed to pay restitution[2] and (2) the court abused its discretion by imposing a term of imprisonment in light of his purported inability to pay restitution. We conclude that the court neither erred in finding that the defendant wilfully failed to pay restitution nor abused its discretion in revoking the defendant's probation and sentencing him to a term of imprisonment. Accordingly, we affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. In 2009, the state charged the defendant with larceny in the first degree in violation of General Statutes § 53a-122 based on his unauthorized withdrawal of $227,863.24 from a home equity line of credit taken out by his mother and his sister.[3] On April 19, 2010, on the basis of those facts, the defendant, representing himself, pleaded guilty to one count of larceny in the first degree in violation of § 53a-122. The trial court, *Hudock, J.*, canvassed the defendant and found that his waiver of counsel was knowing and voluntary, that there was a factual basis for the guilty plea, and that it was made knowingly, voluntarily, and intelligently, whereupon the court accepted the plea. On July 22, 2010, the court sentenced the defendant to ten years of incarceration, execution suspended after three years, followed by five years of probation. As a special condition of probation, the court ordered the defendant to make restitution for verifiable out-of-pocket losses of the complainants in an amount not to exceed $234,933.24, to be verified by the Office of Adult Probation (OAP).[4] The OAP ultimately determined the amount of restitution to be $227,642.

The defendant's probationary period began on February 19, 2013. During the defendant's five year probationary period, the defendant paid a total of $2100 in restitution, leaving a remaining balance of $225,542. On February 15, 2018, the state charged the defendant with one count of violation of probation for failure to pay restitution pursuant to § 53a-32. The defendant denied the charge. On July 16, 2019, the court, *McLaughlin, J.*, held a violation of probation hearing during which the defendant was represented by counsel.

That same day, the court issued its ruling from the bench, initially stating: "When a violation of probation is solely based on the defendant's failure to pay restitution the court must find that the failure was wilful." Guided by that standard, the court found that the state had proved, by a fair preponderance of the evidence,

that the defendant violated the restitution condition of his probation by wilfully failing to pay restitution. The court reasoned: "[The defendant's] payment of $100 a month was not a bona fide effort to make restitution. Rather it was a bare attempt to delay this case in hopes of not having to pay the restitution at all." The court expressly relied on (1) the defendant's testimony that he did not need to pay the restitution,[5] (2) the defendant's failure to apply for various positions with employers such as McDonald's or Wendy's because of his belief that he would not be hired, and (3) Chief Probation Officer Kirk Gordon's testimony that he met with the defendant about his restitution obligation, that the defendant told him that he was going to apply for a loan, and that the defendant thereafter failed to provide any documentation to demonstrate that he did so. In sum, the court stated that, based on all of the evidence and the credibility of the witnesses, it found that the defendant intentionally delayed trying to repay the restitution in the hope that his probationary period would expire.

On December 19, 2019, the court held a sentencing hearing during which it revoked the defendant's probation and sentenced him to three years of incarceration. This appeal followed. Additional facts will be set forth as necessary.

As a preliminary matter, we set forth governing principles of law pertaining to the revocation of probation for failure to pay restitution. In *Bearden* v. *Georgia*, 461 U.S. 660, 672, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983), the United States Supreme Court held: "[I]n revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay." The court explained: "If the probationer [wilfully] refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the [s]tate's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the [f]ourteenth [a]mendment." Id., 672–73; see also *State* v. *Martinik*, 1 Conn. App. 70, 71–72, 467 A.2d 1247 (1983) (reversing judgment of revocation of probation for failure to make appropriate wilfulness finding under *Bearden*).

"As our Supreme Court has recognized in a related context, [t]he impact of indigency on a criminal defendant's liability to pay a fine is codified in our rules of practice. . . . Thus, in Connecticut, it has been acknowledged judicially, both in cases and through our adopted rules of practice, that a finding that a defendant had the ability to pay and wilfully failed to do so is a prerequisite to incarceration for the failure to pay a fine." (Citations omitted; internal quotation marks omitted.) *State* v. *Parker*, 201 Conn. App. 435, 446, 242 A.3d 132 (2020). "[A]n explicit finding of wilfulness is required." Id., 444.

We note that, pursuant to *Bearden* v. *Georgia*, supra, 461 U.S. 672, and *State* v. *Martinik*, supra, 1 Conn. App. 71–72, the trial court (1) considered the reasons for the defendant's failure to pay restitution and (2) concluded that the state proved, by a fair preponderance of the evidence, that the defendant violated his probation by wilfully failing to pay the restitution in the amount of $227,642. Specifically, the court found that the defendant failed to make sufficient bona fide efforts legally to acquire the resources to pay and that the defendant's sporadic payments of $100 per month did not constitute a bona fide effort to make restitution.

I

We first address the defendant's claim that the evidence was insufficient to establish that he wilfully failed to pay restitution.[6] This claim fails.

Before we reach the merits of the defendant's claim, we set forth additional, applicable legal principles. "[R]evocation of probation hearings, pursuant to § 53a-32, are comprised of two distinct phases, [the evidentiary phase and the dispositional phase] each with a distinct purpose. . . . In the evidentiary phase, [a] factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made. . . . In the dispositional phase, [i]f a violation is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Preston*, 286 Conn. 367, 375–76, 944 A.2d 276 (2008). "Since there are two distinct components of the revocation hearing, our standard of review differs depending on which part of the hearing we are reviewing." (Internal quotation marks omitted.) *State* v. *Maurice M.*, 303 Conn. 18, 26, 31 A.3d 1063 (2011).

Because the present claim involves the evidentiary phase and the trial court's factual finding that the defendant wilfully failed to pay restitution, we set forth the standard of review applicable to that phase. "The law governing the standard of proof for a violation of probation is well settled. . . . [A]ll that is required in a probation violation proceeding is enough to satisfy the court

within its sound judicial discretion that the probationer has not met the terms of his probation. . . . It is also well settled that a trial court may not find a violation of probation unless it finds that the predicate facts underlying the violation have been established by a preponderance of the evidence at the hearing—that is, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation. . . . In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence. . . . Accordingly, [a] challenge to the sufficiency of the evidence is based on the court's factual findings. The proper standard of review is whether the court's findings were clearly erroneous based on the evidence. . . . A court's finding of fact is clearly erroneous and its conclusions drawn from that finding lack sufficient evidence when there is no evidence in the record to support [the court's finding of fact] . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) Id., 26–27.

Mindful of these principles, we turn to the defendant's claim that the evidence adduced at his violation of probation hearing was insufficient to support the trial court's wilfulness finding. During the evidentiary phase of the hearing, the state called one witness, Kirk Gordon, a chief probation officer. Gordon testified that Shonda Wright, a probation officer, supervised the defendant from approximately February, 2013, to October, 2017, at which point Gordon took over the defendant's case. Gordon further testified that (1) the defendant met with Wright on a monthly basis, (2) Wright specifically advised the defendant of his $227,642 restitution obligation on December 16, 2014, (3) upon establishing a restitution payment plan with probationers, the OAP sends probationers monthly notifications regarding their payment plans, and (4) the defendant received these notifications. Regarding his own interactions with the defendant, Gordon testified that, in addition to several face-to-face meetings, he had six to seven conversations with the defendant regarding when the restitution was due, the amounts owed, his payment plan, the fact that what the defendant was paying would not be sufficient to pay off the restitution balance, and the consequences of failing to pay the total restitution amount. Gordon also testified that, after speaking to the defendant in November, 2017, he had delayed preparing the arrest warrant for the defendant's violation of probation because the defendant had told him that he planned to pursue a loan in an effort to pay his restitution. The defendant failed to contact Gordon,

however, for three to four weeks thereafter and did not provide him with any loan documentation or an updated payment plan.

In the defendant's case-in-chief, the defense called the defendant as a witness.[7] Initially, the defendant testified that he signed his conditions of probation on February 21, 2013, but that the "issue of restitution [was] not represented properly" because a forensic accounting was supposed to be performed to verify the restitution amount. He then stated that he went on around thirty to thirty-five interviews in his first year of probation, with "[e]verybody from Verizon to Home Depot."[8] The defendant explained, however, that these employers would not hire him because of his felony conviction. Therefore, he did not find employment for "[s]everal months,"[9] until he started working as a "[d]ay laborer" with a small landscaping company called Kemry Hills. The defendant then explained that his work schedule as a day laborer was heavily dependent on the weather, and that "if everything went the right way," he would make "a couple thousand dollars a month." Nevertheless, the defendant also testified that he did not receive his first paycheck until May, 2016, and thus had no income between February, 2013, and May, 2016.[10] Upon reviewing his tax documents, which had been admitted into the record, the defendant explained that he made (1) between $27,000 and $28,000 in 2016; (2) $28,000 in 2017; and (3) $21,000 in 2018.[11] The defendant also testified that he did not do anything outside of landscaping because "that takes most of your time." When asked: "Do you take accountability with paying this restitution amount? Do you believe that you have to pay it," the defendant responded, "No, I don't think I have to pay it."

On cross-examination, the defendant acknowledged that he pleaded guilty to larceny in the first degree for "stealing money from [his] mother" to pay for his "kids' education." On both direct and cross-examination, however, the defendant testified that, although it was his obligation to pay the restitution amount to which he agreed in his guilty plea, he did not believe that he should have to pay it. On redirect examination, the following exchange occurred between the defendant's counsel and the defendant:

"Q. . . . Do you believe that you should have to pay this money back? And just give the court—I just want your honest answer. We're not here to . . . we just want to be honest and transparent. Do you believe that you should have to pay this money back?

"A. No. . . .

"Q. —(inaudible) do you believe that you have to pay this money back?

"A. I'm committed to paying it back. I am committed—I don't believe I owe this money. That's an entirely different situation. . . .

"Q. So you're committed to paying this, as you just testified—

"A. Always have been.

"Q. —because it is your belief that it is your obligation?

"A. Right."

Both the defendant and the state submitted exhibits during the hearing. State's exhibit three shows that the defendant made: (1) no restitution payments in 2013 and 2014; (2) $100 payments in March, April, May, June, July, September, and December, 2015; (3) $100 payments in March, August, September, and November, 2016; and (4) $100 payments in January, February, March, April, May, July, August, September, November, and December, 2017.

After both parties' closing arguments, the court found that the state proved, by a fair preponderance of the evidence, that the defendant violated his probation by failing to pay the restitution in the amount of $227,642. In making this finding, the court expressly relied on "all of the evidence and the credibility of the witnesses . . . ." As to wilfulness, the court found that the defendant's "payment of $100 a month was not a bona fide effort to make restitution. Rather it was a bare attempt to delay this case in hopes of not having to pay the restitution at all." Specifically, the court relied on (1) the defendant's decision to strictly make $100 restitution payments and to do so only in the months that he was working, (2) the defendant's testimony regarding his belief that he should not have to pay the restitution, (3) the defendant's failure to apply to certain positions with employers such as McDonald's, Wendy's, or Home Depot because of his belief that he would not be hired there,[12] and (4) Gordon's testimony detailing his meetings with the defendant regarding his restitution obligations, including the defendant telling him that he was going to apply for a loan and subsequently failing to provide any documentation showing that he had applied for such loan. We conclude that the court's finding that the defendant did not make sufficient bona fide efforts to acquire the resources to pay restitution; see *Bearden* v. *Georgia*, supra, 461 U.S. 672; *State* v. *Martinik*, supra, 1 Conn. App. 71–72; is not clearly erroneous because there is ample evidence in the record to support it. See *State* v. *Preston*, supra, 286 Conn. 376.

## II

We next address the defendant's claim that the court abused its discretion by imposing a term of incarceration based on his purported inability to pay restitution. In support of this claim, the defendant makes five basic contentions: (1) he tried to comply with his restitution obligation; (2) Gordon testified that he had never seen a probationer successfully satisfy a restitution amount

of $200,000 or more; (3) "[n]o public safety preservation is achieved by re-incarcerating a man where the victim of the underlying larceny charge, his mother, has already been recuperated for the funds she lost"; (4) re-incarcerating him did not serve any "penological purpose"; and (5) there were several sentence alternatives available to the court, such as a modification of the sentence, extension of the sentence, and continuation of probation. We reject this claim.

"The standard of review of the trial court's decision at the [dispositional] phase of the revocation of probation hearing is whether the trial court exercised its discretion properly by reinstating the original sentence and ordering incarceration. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . In the dispositional phase, [t]he ultimate question [in the probation process is] whether the probationer is still a good risk . . . . This determination involves the consideration of the goals of probation, including whether the probationer's behavior is inimical to his own rehabilitation, as well as to the safety of the public." (Citations omitted; internal quotation marks omitted.) *State* v. *Preston*, supra, 286 Conn. 377. "A defendant who seeks to reverse the exercise of judicial discretion assumes a heavy burden." (Internal quotation marks omitted.) Id., 381 n.8.

On December 19, 2019, the court held a sentencing hearing during which it revoked the defendant's probation and sentenced him to three years of incarceration. In revoking the defendant's probation, the court reasoned that he was "not someone who [was] seeking their best efforts to at least attempt to pay back the restitution" and there was nothing in the record that evinced "true bona fide good efforts to repay the restitution." The court further reasoned that "this was not a case of someone who is not able to pay. This was a case of someone who did not want to pay and was not going to pay that restitution." Additionally, the court opined: "I think [the defendant] did hope that if he delayed the payment throughout his probation that probation would expire and he could move on with his life."

The defendant's arguments in support of this second claim have not convinced us that an abuse of discretion is manifest or that injustice appears to have been done. See *State* v. *Preston*, supra, 286 Conn. 377. Rather, the defendant is simply repeating many of the same arguments that he made regarding the trial court's wilfulness finding. As explained previously, a court may order the revocation of probation and sentence a defendant to imprisonment based on nonpayment of restitution only when it finds that a probationer has wilfully refused to

pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay. *Bearden* v. *Georgia*, supra, 461 U.S. 672; *State* v. *Martinik*, supra, 1 Conn. App. 71–72. Here, after conducting the proper inquiry and finding that the defendant failed to make sufficient bona fide efforts, the court revoked the defendant's probation and sentenced him to imprisonment. Pursuant to *Bearden*, "a probationer's failure to make sufficient bona fide efforts to seek employment or borrow money in order to pay the fine or restitution may reflect an insufficient concern for paying the debt he owes to society for his crime. In such a situation, the [s]tate is likewise justified in revoking probation and using imprisonment as an appropriate penalty for the offense." *Bearden* v. *Georgia*, supra, 668. "[T]he element of punishment in probation revocation of [the] defendant is attributable to the crime for which he [or she] was originally convicted and sentenced. Thus, any sentence [the] defendant had to serve as the result of the [probation] violation . . . was punishment for the crime of which he [or she] had originally been convicted. Revocation is a continuing consequence of the original conviction from which probation was granted." (Internal quotation marks omitted.) *State* v. *Santos T.*, 146 Conn. App. 532, 536–37, 77 A.3d 931, cert. denied, 310 Conn. 965, 83 A.3d 345 (2013).

Furthermore, the court's reasoning in revoking the defendant's probation and imposing an additional term of incarceration makes clear that it necessarily believed (1) the defendant's behavior to be inimical to the goals of his probation; see *State* v. *Preston*, supra, 286 Conn. 377; and (2) that the rehabilitative purpose of probation could no longer be served. We will not substitute our judgment for that of the trial court. *State* v. *Roman*, 13 Conn. App. 638, 641, 538 A.2d 1076 (1988). In light of the foregoing, we conclude that the court did not abuse its discretion in revoking the defendant's probation and sentencing him to three years of incarceration.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-32 provides in relevant part: "(a) At any time during the period of probation . . . the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation . . . .

"(c) Upon . . . an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which such defendant is alleged to have violated the conditions of such defendant's probation . . . shall be advised by the court that such defendant has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in such defendant's own behalf. . . .

"(d) If such violation is established, the court may . . . (4) revoke the sentence of probation . . . . If such sentence is revoked, the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. Any such lesser sentence may include a term of imprisonment, all or a portion of which may be suspended entirely or after a period set by the court, followed by a period of probation with such conditions as the

court may establish. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence.''

[2] See footnote 6 of this opinion.

[3] The defendant also was charged in a separate file with larceny in the second degree in violation of General Statutes § 53a-123 and issuing a bad check in violation of General Statutes § 53-128 based on his unauthorized taking of $7070 from a childhood friend. See footnote 4 of this opinion.

[4] At sentencing, the state nolled the charges of larceny in the second degree and issuing a bad check, contingent on the $7070 being included in the total restitution amount. See footnote 3 of this opinion.

[5] The court also explained that the defendant's uniform payments of $100 per month worked against his argument that he had made bona fide efforts to acquire the resources to pay: "If [the defendant] had paid varying amounts instead of the $100 a month while he was working, perhaps the court would come to a different decision. However, he did not.''

[6] We pause at this juncture to emphasize that the defendant does not dispute that the trial court made the necessary finding pursuant to *Bearden* v. *Georgia*, supra, 461 U.S. 672, that his failure to pay was wilful. In this way, this case is distinguishable from *State* v. *Parker*, supra, 201 Conn. App. 449–52, in which this court held that, pursuant to *Bearden*, the trial court did not make the necessary finding that the defendant's failure to pay was wilful, which required the reversal of the judgment. As a result, we concluded in *Parker* that "it [was] not necessary to reach the defendant's second claim that the state introduced insufficient evidence to prove that the defendant wilfully refused to pay restitution.'' *State* v. *Parker*, supra, 452. In the present case, the defendant is making a claim akin to the second claim raised in *Parker*.

Relatedly, because the defendant conceded during oral argument before this court that the trial court made the requisite wilfulness finding pursuant to *Bearden*, we deem abandoned his first claim set forth in his principal appellate brief that the trial court committed a *Bearden* violation. See *Cunningham* v. *Commissioner of Correction*, 195 Conn. App. 63, 65 n.1, 223 A.3d 85 (2019) (declining to review claims that counsel expressly abandoned at oral argument), cert. denied, 334 Conn. 920, 222 A.3d 514 (2020).

[7] The defendant confirmed that he had consulted with his attorney and decided to waive his constitutional right not to testify.

[8] The defendant also stated that he did not apply to positions with McDonald's, Burger King, Wendy's, or Starbucks.

[9] The defendant testified that he did not apply for unemployment during these months because he had the "ability to work.'' He did not, however, speak to anyone regarding his qualifications for unemployment.

[10] For at least part of this time, the defendant pursued a doctorate in foreign affairs from North Central University, an online program. The defendant explained that he took out a student loan of "like $10,000, $12,000,'' to pay for this education. He further explained that he made some payment toward this loan in "approximately 2015.''

[11] The defendant explained that his income dropped in 2018 because it rained more than usual and he was unable to work as many hours as he had in 2016 and 2017.

[12] The court stated that the defendant did not apply to Home Depot. The defendant testified, however, that he applied to a position with Home Depot but was denied employment because of his felony conviction. Nevertheless, the defendant testified that he did not apply to positions with McDonald's, Burger King, Wendy's, or Starbucks because he believed that he would not be hired by these employers as a result of his felony conviction. See footnote 8 of this opinion. Therefore, the court's point still stands.